## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **RAFAEL MARFIL, VERGE PRODUCTIONS LLC, ENRICO MARFIL, NAOMI MARFIL, KOREY RHOLACK, DANIEL OLVEDA, AND DOUGLAS WAYNE MATHES,** | § § § § § | |
| *Plaintiffs,* | § | Civil Action No. 6:20-cv-248 |
| | § | |
| **v.** | § | |
| | § | |
| **THE CITY OF NEW BRAUNFELS, TEXAS,** | § § | |
| *Defendant.* | § | |

## ORIGINAL COMPLAINT

### I. Introduction

In a free society, people are not obliged to explain why they go places, how long they stay there, whom they stay with, and what they do in the privacy of homes they rent. There are a hundred reasons why people stay in a place for short periods, and why they might want to live temporarily in a home in a neighborhood instead of in a generic tilt-wall hotel on the highway. People reside temporarily in a place to be near loved ones in quarantine or under treatment; to be near a spouse at a job or on a duty rotation in the military; to help displaced people or to have a home while displaced; to have a home away from home between long-haul routes; to vacation: the explanations are as varied as people, and it is a fundamental aspect of American democracy none may be inquired into or restricted by the government without a rational basis.

In 2011, without any studies or data, the City of New Braunfels adopted an ordinance which classifies ordinary residences as businesses and nuisances if they are

leased for short terms of 30 days or less. Thus, while a homeowner who wishes to lease a home for 31 days has an unfettered right to lease without the City's interference, a homeowner who wishes to lease a home for 29 days has no such right. The landlord of a short-term rental must obtain wholesale rezoning of the property as commercial in order to lease to ordinary people who wish to reside in New Braunfels temporarily. The City then denies such rezoning requests, effectively banning short-term rentals (STR's) for all residentially-zoned properties.

The United States and Texas Constitutions forbid cities from making such arbitrary, irrational determinations and prohibitions. In addition, Texas law preempts the City's new ban: the Texas Legislature comprehensively regulates leasing and has made short-term rentals a source of state revenue. A city ordinance which interferes with state regulation and bars the state from earning the very revenue it expressly targets is void.

## II. Parties & Service

1.      Plaintiff Rafael Marfil, is a Texas resident residing at 19693 Bat Cave Road, Garden Ridge, TX 78266. Rafael Marfil owns 100% of Verge Productions, LLC, and Texas limited liability company which resides in Texas.

2.      Plaintiffs Enrico and Naomi Marfil, a married couple, are Texas residents residing at 129 Bristow Way, Boerne, TX 78006.

3.      Plaintiff Korey Rohlack is a Texas resident residing at 310 Main Street, Martindale, TX 78655.

4.      Plaintiff Daniel Olveda is a Texas resident residing at 1267 E. Common Street, New Braunfels, TX 78130.

5.     Plaintiff Douglas Wayne Mathes is a Texas resident residing at 7208 Nubian Cove, Austin, TX 78739.

6.     Defendant City of New Braunfels, Texas ("City") is a home-rule municipality with a council-manager structure headquartered in Comal County, Texas. **The City may be served with citation upon the Mayor, Clerk, Secretary, or Treasurer at 550 Landa St., New Braunfels, TX 78130. Phone: 830-221-4000**. *See* Tex. Civ. Prac. & Rem. Code § 17.024(b).

7.     The Attorney General of Texas must also be served with the complaint and is entitled to be heard because this is a constitutional challenge to a city ordinance. Tex. Civ. Prac. & Rem. Code § 37.006(b). **Service of process upon the Attorney General may be made at 300 W. 15th Street, Austin, Texas 78701**.

### III. Jurisdiction & Venue

8.     The court has jurisdiction over the lawsuit under 28 U.S.C. § 1331 because the suit arises under article 3 of the U.S. Constitution. Plaintiffs seek a declaratory judgment that a municipal ordinance is unconstitutional on its face and as applied.

9.     The court has supplemental jurisdiction over claims asserted under the Texas Constitution under 28 U.S.C. § 1367 because those claims are so related to the claims within the court's original jurisdiction that they form part of the same case or controversy under article 3 of the U.S. Constitution.

10.     Governmental immunity does not apply because it does not shield a city from viable claims for relief from unconstitutional acts. *See Patel v. Texas Dep't of Licensing & Regulation*, 469 S.W.3d 69, 75 (Tex. 2015); *Zaatari v. City of Austin*, No. 03-17-00812-CV, 2019 WL 6336186, at *5 (Tex. App. – Austin Nov. 27, 2019, no pet. h.).

11.     Venue is proper in the Western District of Texas under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Texas. No local rule mandates the filing of suit in a particular division of the Western District of Texas.

## IV. Facts

### A. Short-Term rentals are a historically protected, residential use.

12.     Private property ownership is a fundamental right in the United States. *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012). "The right of property is the right to use and enjoy, or dispose of the same, in a lawful manner and for a lawful purpose." *City of Wink v. Griffith Amusement Co.,* 129 Tex. 40, 100 S.W.2d 695, 700 (1936) (citation omitted).

13.     The ability to lease property is a fundamental privilege of property ownership. *See Terrace v. Thompson*, 263 U.S. 197, 215, 44 S.Ct. 15, 68 L.Ed. 255 (1923) (noting that "essential attributes of property" include "the right to use, lease and dispose of it for lawful purposes").

14.     Texas common law enshrines leasing as a basic, sacrosanct property right. The "right to acquire and own property, and to deal with it and use it as the owner chooses, so long as the use harms nobody, is a natural right." *Spann v. City of Dallas*, 111 Tex. 350, 356 (Tex. 1921); *see also Barber v. Texas Dep't of Transp.*, 49 S.W.3d 12, 18 (Tex. App.—Austin 2001), *rev'd on other grounds*, 111 S.W.3d 86 (Tex. 2003); *see also French v. Chevron U.S.A. Inc.*, 896 S.W.2d 795, 797 (Tex. 1995) (right to lease out property part of the bundle of sticks usually conveyed with title.); *Calcasieu Lumber Co. v. Harris*, 13 S.W. 453, 454 (1890) ("the right to lease [property] to others, and therefore

derive profit, is an incident of [fee] ownership."); *Markley v. Martin*, 204 S.W. 123, 125 (Tex. Civ. App.—San Antonio 1918, writ ref'd) ("An owner has the "absolute right to lease her property and collect the rents.")

15.     The rental of property on a short-term basis is likewise an established practice and historically-allowable use. *Zaatari*, 2019 WL 6336186, at *9.

16.     The fact that a lease is for a short duration does not mean that the use of the property is commercial in nature, any more than it would mean that a longer-term lease is commercial. *See Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 291 (Tex. 2018) (declining to interpret "residential" as prohibiting short-term rentals); *see also Vera Lee Angel Revocable Tr. v. Jim O'Bryant & Kay O'Bryant Joint Revocable Tr.*, 2018 Ark. 38, 8, 537 S.W.3d 254, 258 (2018) (same); *Slaby v. Mountain River Estates Residential Ass'n, Inc.*, 100 So. 3d 569, 578 (Ala. Civ. App. 2012) (same). Nor does the fact that the owner may not live in the rental property matter: "[A] ban on [non-owner-occupied] short-term rentals does not advance a zoning interest because both short-term rentals and owner-occupied homes are residential in nature." *Zaatari*, 2019 WL 6336186, at *9.

17.     What determines whether a use is residential or commercial is what the occupants are doing on the land. *See generally*, *Tarr*, *Slaby*, *id*. A short-term rental ("STR") is just an ordinary home lease but with a term less than a year and usually less than a month. Short-term rentals are usually fully-furnished homes where the owner may or may not also use the home when renters are not present. *See*, *e.g.*, *Boatner v. Reitz*, No. 03-16-00817-CV, 2017 WL 3902614, at *1 (Tex. App. – Austin 2017, no pet.)

(owners of vacation home who rented out the home when not using it themselves were not engaged in a "business use" of the home).

18.     There is no agreed-upon definition for the dividing line between a "short-term" and "long-term" lease. *See generally Tarr*, 2018 WL 2372594 (rejecting arguments that rentals of some minimum duration are a business use, abrogating cases setting various time limits). That said, State of Texas and local governmental units such as municipalities impose a tax for occupancy periods of less than 30 days; these are usually called a "hotel tax." The Texas Hotel Tax was amended in 2015 to add the renting of ordinary homes all over the state, no matter how zoned. *See* Tex. Tax Code § 156.001(b); § 156.101 (applicability to rentals of less than 30 days).

## B. The State of Texas Regulates and Taxes STR's

19.     The State of Texas already regulates leasing. Within the broad common-law leasing right, the Legislature has enacted residential leasing regulation in Chapter 92 of the Property Code. Chapter 92 applies "to the relationship between landlords and tenants of residential real property." *See* Tex. Prop. Code § 92.002.

20.     Chapter 92 does not restrict or bar STR's. *See* Tex. Prop. Code § 92.001 (general definitions refer to "permanent residence"). Strikingly, it does not even subject them to the maximum occupancy limitations of § 92.010. That is not an oversight; it is deliberate. For example, § 92.152, which regulates security devices, refers to both "transient housing" and "temporary residential tenancy." Section 92.010, the statewide maximum lease occupancy statute, allows persons "seeking temporary sanctuary" to remain at a leasehold premises for 30 days even if the maximum occupancy cap is

exceeded. The Legislature plainly understood the concept of temporary leasing and chose not to restrict it in any meaningful way.

21.     Even more recently, in 2015 the Legislature added language to the state hotel occupancy tax which expressly makes STR's a source of state revenue: the short-term rental of a homes was included in the statutory definition of "hotel." *See* Tex. Tax Code § 156.001(b) (2015); § 156.101 (1991) (applicability to rentals of less than 30 days). Thus, while the Legislature understood the concept of STR's and even went out of its way to get revenue from them, it also left them almost completely unregulated, indicating a deliberate desire to allow them.

22.     Separately, the state allows cities to impose their own local hotel tax, just as New Braunfels did pursuant to that statutory grant. *See* Tex. Tax Code Ch. 351; City of New Braunfels Code of Ordinances §§ 122-26 *et seq*. The City defines "hotel" broadly to encompass homes just as the state hotel occupancy tax does. *Id*.

### C. New Braunfels bans STR's by labelling them as "non-residential" and presuming them nuisances and safety risks.

23.     Central New Braunfels has a recreational riverfront and a huge, ever-expanding commercial waterpark, Schlitterbahn. According to the Schlitterbahn website, "Schlitterbahn is woven into the fabric of Historic New Braunfels." Schlitterbahn reportedly has more than a million guests each summer.

24.     As recreation and tourism have increased in central New Braunfels, more and more people wish to stay in the center of town conveniently near the recreational amenities. However, because of residential zoning restrictions, the central part of town has remained largely older, single-family dwellings.

25.     In approximately 2011, the City announced plans to restrict short-term rentals and allowed a short period during which property owners could obtain special permits or rights to continue renting for short terms, effectively creating a small pool of owners with special rights. Later owners would not be allowed those rights.

26.     Later in 2011, the City banned the short-term renting of these homes so that property owners could not take advantage of the economic growth and rise in property values the City was promoting all around their homes. The City adopted a new zoning ordinance at subsection 5.17 of Chapter 144, the main zoning ordinance. The heart of the new ordinance is a ban on STR's in residentially-zoned districts, with adverse evidentiary inferences based on what cars are parked at a house and severe money penalties at a minimum:

> 5.17-2. Definitions.
>
> . . .
>
> Short term rental means the rental for compensation of one- or two-family dwellings, as defined in the IRC (International Residential Code), for the purpose of overnight lodging for a period of not less than one night and not more than 30 days other than ongoing month-to-month tenancy granted to the same renter for the same unit. This is not applicable to hotels, motels, bed and breakfasts, resort properties as defined in this chapter or resort condominiums.
>
> . . .
>
> 5.17-3. Applicability.
>
> (a) Short term rental within residential districts is prohibited.
>
> . . .
>
> 5.17-7. Enforcement/penalty.
>
> . . .
>
> (e) The provisions of this subsection are in addition to and not in lieu of any criminal prosecution or penalties as provided by city ordinances or county or state law.
>
> (f) Proof. Prima facie proof of occupancy of a dwelling is established in any prosecution for violation of this section if it is shown that vehicles with

registrations to persons having different surnames and addresses were parked overnight at the dwelling. Establishment of a prima facie level of proof in this subsection does not preclude a showing of illegal "occupancy" of a dwelling by a person in any other manner.

(g) Offense. It is an offense for the property owner, any agent of the property owner, or the occupant(s) to directly occupy or indirectly allow, permit, cause, or fail to prohibit an occupancy in violation of this section 144-5.17. Each day that a unit is occupied in violation of this ordinance shall be considered a separate offense, and, upon conviction, shall be subject to a minimum fine of $500.00 to a maximum fine of $2,000.00 per violation.

(h) Each day of violation of said standards and provisions of this section constitutes a separate offense and is separately punishable, but may be joined in a single prosecution.

27.     However, the owners of homes located in commercial districts are entitled to seek a permit. Ordinances § 144-5.17-3(c). Thus, the manner in which the City banned STR's amounts to a declaration or finding that ordinary residential leasing is *not* residential if the lease term is less than 31 days.

28.     There is next to no legislative history supporting or explaining the 2011 STR Ban. The documents for the May 9, 2011 council meeting at which the STR Ban was approved references "several workshops" and the "protection of residential neighborhoods." However, there are no legislative findings, reports, or data supporting the STR ban or the principle that short-term leases are not residential in nature.

29.     Other parts of the STR Ordinance indicate that the City was motivated in part by concerns that short durations of rental cause problems that longer durations of rental do not. Thus, owners of homes in non-residential areas can obtain a permit to rent for short terms, but subject to elaborate regulations governing noise, sleeping, postings and signage, safety protocols, trash, and other factors. *See* Ordinances § 144-5.17-4. None of these regulations apply to longer-term rentals. Thus, the City equates *duration* of use (long or short) with the *character* of use (residential or commercial), the *conduct* of

occupants (bad or good), and the *condition* of the premises (safe or unsafe).  According to the City of New Braunfels, *short-term* = commercial, bad, and unsafe, whereas *long-term* = residential, good, and safe.

### D. The Homeowners seek to exercise their historical, fundamental property rights to lease for any duration but are denied that right.

30.     The plaintiff Homeowners all own homes in the City of New Braunfels and are therefore subject to the City's ordinances.

31.     Each of the Homeowners purchased, acquired, improved, and invested money in New Braunfels homes in reliance on U.S. and Texas citizens' historical right to rent out homes for ordinary residential use for any duration of occupancy.

32.     The income from short-term rentals can be significantly greater, calculated on a daily basis, than that afforded by long-term rentals, but that is not the sole reason owners seek to rent for short terms. An individual owner might make no more annually from STR's than a long-term lease would afford because the owner has important freedoms and liberties he or she wishes to exercise. STR's afford owners far more flexibility in the use and occupancy of their homes. An owner can occupy the home part of the time while renting it out at other times. An owner can use STR income to offset carrying costs or even afford to own the home in the first place. Some owners have personal reasons for wishing to rent out their homes for short terms, such as meeting people from around the world or welcoming people to their community. People stay in STR's to immerse themselves in new places and to decide whether to move to the places they stay.

33.     The Homeowners in this case illustrate a range of individual experiences and rationales for renting for short terms:

a. Rafael Marfil was born in New Braunfels and later wished to own property there that he and his family could use. However, he would need rental income to afford a home there. He purchased 415 Union Street, which lies directly in front of the entrance to Schlitterbahn but is zoned residential; the property is titled in the name of Verge Productions, LLC. Rafael Marfil invested more than $50,000 to improve the property. However, because of that location, the property is not well suited to long-term rental, and in any event, its highest potential rental income is from short-term rentals.

Marfil sought rezoning to commercial status with the City but was denied after exhausting administrative remedies through to the end of City Council appeal.

Marfil and his family and friends are regularly harassed by neighbors when they stay at 415 Union Street because they are not full-time owner-occupants.

b. Enrico and Naomi Marfil bought 435 S. Union Street in 2018. Enrico, like his brother Rafael, wished to replant roots in New Braunfels and invest in the community. He and his family wished to both use and enjoy the property themselves and also share the house with others and show off his city by renting the house out for short terms. A long-term rental would shut out the possibility of his own use and deny him the rental income which helps offset the carrying costs of the house.

c. Korey Rohlack bought an unimproved lot on 1265 E. Common Street in 2017 in order to develop it for use as his own residence and as a short-term rental. It sits across the street from commercially-zoned properties. He is from the area and works as an airline pilot, which means he is regularly away from home for days at a time. He planned to build a house on the property in order to live in it himself and then rent it out at other times. Rent income would allow him to cover and defray the carrying costs of the property (such as the mortgage and property taxes) and also supplement his income to help support his elderly parents who reside nearby. Rohlack grew up in a bed-and-breakfast operated by his parents and enjoys welcoming new people to his home and community. He learned from other experiences with different properties owned by his family that long-term renters were more troublesome and damaging to property than short-term renters.

Rohlack sought commercial zoning for his lot, but the City Council killed the Planning & Zoning Commission's approval, at the cost of thousands of dollars which Rohlack sunk in the process. Rohlack's building plans and construction loan remain unsettled and in limbo, threatened by his inability to rent out for short terms any home he might build.

d.  Daniel Olveda owns E. 1267 Common Street, next door to Plaintiff Rohlack and likewise across the street from commercially-zoned properties. He bought the property in 2017. After he moved in, realizing he was near Schlitterbahn and the historic town of Gruene, he decided to pursue short-term renting. Unaware of the New Braunfels STR ban, the City soon required him to cease and desist or else face prosecution and ruinous fines. On the advice of City officials, he sought a zoning change from residential to commercial and allied with several neighbors around him, including Rohlack, in the effort. Olveda spent thousands of dollars in the effort. The City did various studies confirming that the several properties should be zoned commercial, and the Planning & Zoning Commission approved the plan. The City Council then killed it.

e.  Douglas Wayne Mathes owns both 185 Cross River Street and 590 Washington Avenue. He bought 185 Cross River in 2011 in order to rent it out for short terms and earn sufficient income to buy a permanent home for his family. The home is next door to a short-term rental property and also sits approximately 50' from the entrance to Schlitterbahn. Long-term rentals would earn no more than half the rental income of short-term rentals. After he purchased, he discovered that not only would he have to seek rezoning of the property to commercial, but that some of his neighbors were vigorously opposed to STR's and would seek to block him. Some of these people had previously been grandfathered into STR rights by the City and therefore opposed any new competitors. Some of these persons actively harassed him and his family and friends by surveilling the property and taking photographs of people's comings and goings. He ultimately determined, after witnessing City Council hearings at which rezoning for STR's was being sought by others, that seeking rezoning from the City would be futile.

34.  The Homeowners all desire to rent out the entirety of their properties at any given time, conveying sole and exclusive possession to tenants in the manner of an ordinary home rental. None of the Homeowners intend to rent out individual rooms, or

have employees staff their rental properties, or maintain a front desk or concierge there, or otherwise operate an ongoing business concern upon their rental properties. They do not intend to allow anyone to operate businesses at the properties.

## V. CLAIMS FOR RELIEF

### A. Declaratory Judgment

### 1. The New Braunfels STR Ordinance deprives the Homeowners of equal protection under the U.S. and Texas Constitutions

35.     The foregoing paragraphs are realleged and incorporated herein by reference.

36.     The Fourteenth Amendment to the United States Constitution provides that equal protection of the laws shall not be denied to any citizen of the United States.

37.     Article 1, Section 3 of the Texas Constitution guarantees that "[a]ll free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services."

38.     "Texas cases echo federal standards when determining whether a statute violates equal protection under either provision." *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 846 (Tex. 1990).

39.     To prevail on an equal protection claim, a plaintiff must establish that the government treated that plaintiff differently than similarly situated parties without a rational basis for doing so. *Downs v. State*, 244 S.W.3d 511, 518 (Tex. App. – Fort Worth 2007) (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985)). Economic regulations, such as zoning decisions,

have traditionally been afforded such "rational relation" scrutiny. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 939 (Tex. 1998) (citing *City of Cleburne*).

40.     An ordinance is not rationally related to a legitimate state interest if it creates a distinction between two similarly-situated classes which bears no relationship to the alleged objective. *City of Cleburne*, 473 U.S. at 440.

41.     The New Braunfels STR Ban treats similarly-situated owners of ordinary residentially-zoned homes differently. There are two varieties of equal protection violations:

a. Owners in residentially-zoned areas who rent for more than 30 days have an all-but unfettered right to rent out their homes. Owners in residentially-zoned areas who rent for 30 days or less are outright banned from doing so.

b. Owners as of 2006 obtained short-term rental rights to the exclusion of everyone who purchased properties later.

42.     This distinction between short-term landlords and long-term landlords lacks any rational basis and bears no relationship to the supposed objectives of the STR Ban:

a. The City has no rational basis for concluding that renting out a home for short terms renders the home itself a "business," any more than renting out a home for long terms does. A property owner may well be in the leasing business, broadly speaking, but that fact does not render the owner's *leased property* a business; if it did, all leased homes would be businesses. A home is a "business," no matter who occupies it or if no one occupies it, if commercial activities occur

on the premises. The earning of rent is irrelevant, as is the duration of the
rental. *See Tarr*, 556 S.W.3d at 288.

b.   The City has no rational basis for concluding that homes rented out for short
terms cause more, worse, or different noise, trash, traffic, parking, or nuisance-
type problems than homes rented out for long terms. By definition, if a home
is rented out to tenants, it is occupied by people who come and go, laugh and
love, eat and drink, drive and park, party and play, just like any other
occupants of a home, whether owners, guests, or tenants. *See Zaatari*, 2019
WL 6336186, at * 8 (misconduct concerns about STR's are already addressed
by ordinances and laws addressed specifically to such misconduct).

c.   The City has no rational basis for allowing owners of properties in
residentially-zoned areas as of 2006 to rent out their homes for short terms,
while owners who purchased residentially-zoned properties after that date
were frozen out.

43.   Accordingly, the City's classification of homeowners whom it prosecutes
based on the duration of the homeowner's rental lacks any rational basis and should be
declared a violation of the constitutional guarantee of equal protection under either or
both the U.S. and Texas Constitutions.

**2. The New Braunfels STR Ordinance deprives the Homeowners
of due process under the U.S. and Texas Constitutions.**

44.   The foregoing paragraphs are realleged and incorporated herein by
reference.

45.   The Fourteenth Amendment to the United States Constitution that no
person shall be "depriv[ed] of life, liberty, or property, without due process of law."

46.   Article I, § 19 of the Texas Constitution provides: "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."

47.   A law may be declared a violation of due process because it takes away a vested or fundamental property right not expressly mentioned in the U.S. or Texas Constitutions. *See generally Klumb v. Houston Mun. Employees Pension Sys.*, 458 S.W.3d 1, 15 (Tex. 2015). This is known as "substantive" due process, as contrasted with "procedural" due process.

48.   The right to lease, and for any duration, is a fundamental property right for the reasons set forth in foregoing paragraphs. The City has taken that right away from Plaintiffs because they are prohibited from renting for durations of less than 30 days.

49.   A substantive due process challenge based on such a deprivation of substantive due process can be facial or as-applied. "A facial challenge is an attack on a statute itself as opposed to a particular application." *City of Los Angeles v. Patel*, 576 U.S. ——, 135 S. Ct. 2443, 2449, 192 L.Ed.2d 435 (2015). In order to successfully mount a facial challenge, a party must establish that no set of circumstances exists under which that statute would be valid. *See United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

50.   By contrast, "[w]hen a party makes an 'as applied' challenge to a statute, the essence of the challenge asserts that the statute, although generally constitutional, is unconstitutional when applied to the challenging party's particular circumstances. *Ex*

*parte Moon*, No. 01-18-01014-CR, 2020 WL 827424, at *9 (Tex. App. – Houston [1ˢᵗ Dist]

Feb. 20, 2020, no pet. h.).

    51.    In either case, the standard is whether there is a rational relationship

between the ordinance and its purpose:

> A court should not set aside a zoning determination for a substantive due
> process violation unless the action "has no foundation in reason and is a
> mere arbitrary or irrational exercise of power having no substantial
> relation to the public health, the public morals, the public safety or the
> public welfare in its proper sense."
>
> A generally applicable zoning ordinance will survive a substantive due
> process challenge if it is designed to accomplish an objective within the
> government's police power and if a rational relationship exists between the
> ordinance and its purpose. This deferential inquiry does not focus on the
> ultimate effectiveness of the ordinance, but on whether the enacting body
> could have rationally believed at the time of enactment that the ordinance
> would promote its objective. If it is at least fairly debatable that the decision
> was rationally related to legitimate government interests, the decision
> must be upheld. The ordinance will violate substantive due process only if
> it is *clearly* arbitrary and unreasonable.

*Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 938 (Tex. 1998) (internal citations

omitted).

    52.    While the Texas due course of law protections generally align with those of

the United States, the Texas Constitution has additional protections for individuals

asserting an as-applied challenge:

> [T]he standard of review for as-applied substantive due course challenges
> to economic regulation statutes includes an accompanying consideration . .
> . : whether the statute's effect as a whole is so unreasonably burdensome
> that it becomes oppressive in relation to the underlying governmental
> interest.

*Patel v. Texas Dep't of Licensing & Regulation*, 469 S.W.3d 69, 86 (Tex. 2015); *see also*

*Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 626–

27 (Tex.1996) (same, as applied to zoning in a substantive due process and equal protection case).

53.     Furthermore, while ordinances generally are presumed constitutional, zoning ordinances are construed more strictly. *See City of Kermit v. Spruill*, 328 S.W.2d 219, 223 (Tex. Civ. App. 1959, writ refused n.r.e.). "Any regulation of land use is in derogation of the common law." *Town of Annetta S. v. Seadrift Dev., L.P.*, 446 S.W.3d 823, 830 (Tex. App. – Fort Worth 2014) (citing *Thomas v. Zoning Bd. of Adjustment,* 241 S.W.2d 955, 957 (Tex.Civ.App.-Eastland 1951, no writ) and *Bryan v. Darlington,* 207 S.W.2d 681, 683 (Tex.Civ.App.-San Antonio 1947, writ ref'd n.r.e.) ("All restrictions of the free use of land are in derogation of the common law right to use land for all lawful purposes that go with the title and possession, and are to be construed strictly against the person creating or attempting to enforce such restrictions.")).

54.     The New Braunfels STR Ordinance is facially invalid. In prohibiting short-term leasing within residential districts while allowing it in commercial districts, it equates the duration of rental with commercial use. There is no sense in which duration relates to the character of the use. Character of use is determined by what human beings actually do upon the land, and if all they do is engage in the ordinary incidents of residing in a place, any governmental determination that they are engaging in a trade or business has no foundation in reason and is arbitrary and irrational.

55.     The New Braunfels STR Ordinance is also invalid as applied. The City requires owners to seek re-zoning to commercial in order to obtain the right to rent for short terms. There is no rational basis for this requirement because duration of use does

not determine the character of the use, so forcing owners to seek commercial zoning is clearly arbitrary and unreasonable.

56.     The City also denies rezoning for no reason when property owners seek it in order to rent for short terms. The plaintiffs in this case were approved by a City commission based on studies and data only to have the City Council summarily kill that approval with no rationale. The City's manner of applying the STR Ban was clearly arbitrary and unreasonable.

57.     Finally, the City has no rational basis for concluding that the duration of use, in and of itself, equates to or causes misconduct such as nuisance, trash, noise, or parking violations, which are purported bases for the City's adoption of the STR Ban. There is no reason to believe that any given home has more use, occupancy, or traffic just because it is rented for short durations. People come and go from homes freely at all times, as do their guests, friends, and other invitees. At any given snapshot in time, the occupants of a home are those, whether owners or tenants, who have a valid possessory interest or invitee status from those in possession. The City already has ordinances addressing misconduct as well as safety standards, so there is no need for duplicative regulation of properties rented for short durations. Thus, City's regulation of conduct in STR's over and above what existing use, occupancy, and traffic laws already allow is not even a rational reason to ban STR's if those allegations are true.

58.     Accordingly, the Court should declare that the City's STR ban violates the substantive due course of law and due process rights of the plaintiff Homeowners.

### 3. The New Braunfels STR Ban Is Constitutionally Preempted

59.     The foregoing paragraphs are realleged and incorporated herein by reference.

60.     In addition or in the alternative, the court should declare that Texas Tax Code Chapter 156, in combination with Texas Property Code Chapter 92, preempts the New Braunfels STR ban.

61.     Preemption is also grounded in constitutional law. Article XI, Section 5(a) of the Texas Constitution provides that home-rule city ordinances shall not "contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." *See generally City of Laredo v. Laredo Merchants Ass'n*, 550 S.W.3d 586, 592 (Tex. 2018) (in express preemption case, city could not ban plastic trash bags); *City of Fort Worth v. Rylie*, No. 02-17-00185-CV, 2018 WL 4782291, at *8 (Tex. App. – Fort Worth Oct. 4, 2018, no pet. h.) (similar).

62.     This case involves implied preemption, where the standard is as follows:

> The mere entry of the state into a field of legislation does not automatically preempt that field from city regulation. Rather, local regulation, ancillary to and in harmony with the general scope and purpose of the state enactment, is acceptable. Absent an express limitation, if general law and local regulation can coexist peacefully without stepping on each other's toes, both will be given effect or the latter will be invalid only to the extent of any inconsistency.

*Id.* at 593 (cleaned up). Further, as quoted approvingly in *City of Laredo*:

> a general law and a city ordinance will not be held repugnant to each other if any other reasonable construction leaving both in effect can be reached. In other words, both will be enforced if that be possible under any reasonable construction, just as one general statute will not be held repugnant to another unless that is the only reasonable construction.

*City of Beaumont v. Fall*, 116 Tex. 314, 291 S.W. 202, 205–206 (1927).

63.     There appears to be no reported Texas case in which a city has outright banned an activity which the state has expressly taxed.[1] It is hard to see how a city can completely undermine Legislative intent in that way. The general run of cases involve cities regulating in the interstices of statutes, such as taxing or further regulating a subject matter addressed by statute. Even municipal smoking ordinances don't completely take away someone's right to smoke in their own home. Yet the New Braunfels STR ban forbids precisely what the Legislature has taxed and bans human activity *in a private home.*

64.     In this case, the Legislature expressly began taxing STR's in 2015 as part of the state hotel occupancy tax. The intent to raise revenue from that source is plain. At the same time, the Legislature declined to change the existing regime of residential leasing at Chapter 92 of the Property Code, which, given express references to "transient"-type stays in that statute, the Legislature plainly would have done had the Legislature intended to restrict such rentals. Allowing cities to ban STR's would undermine the Legislature's intent to generate revenue and subject STR's to a ban inconsistent with the Legislature's desire to allow such rentals without restriction. The Grapevine STR ban stands in direct conflict with the state's revenue goals and comprehensive regulation of leasing generally and is thus preempted. The court should declare as much.

---

[1] However, in the *City of Beaumont* case, a municipal ordinance which thwarted the Legislature's determination that the statute of limitations was not a valid defense in a tax suit was held impliedly preempted. *Id.* at 205-206.

## VI. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs Rafael Marfil, Verge Productions LLC, Enrico Marfil, Naomi Marfil, Korey Rholack, Daniel Olveda, and Doug Wayne Mathes respectfully pray that judgment be entered for Plaintiffs against Defendant for a declaratory judgment that the New Braunfels STR Ban be held and declared unconstitutional and therefore unenforceable for the reasons set forth herein, along with such other and further relief to which Plaintiffs may be entitled at law or in equity.

Respectfully submitted,

*/s/ J. Patrick Sutton*
J. Patrick Sutton
Texas Bar No. 24058143
1505 W. 6th Street
Austin, Texas 78703
Tel. (512) 417-5903
*jpatricksutton@jpatricksuttonlaw.com*

Attorney for Plaintiffs