# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| RAFAEL MARFIL, VERGE PRODUCTIONS LLC, ENRICO MARFIL, NAOMI MARFIL, KOREY ROHLACK, DANIEL OLVEDA, and DOUGLAS WAYNE MATHES, | § § § § § | |
| *Plaintiffs*, | § | Civil Action No. 6:20-cv-00248-ADA-JCM |
| | § | |
| vs. | § | |
| | § | |
| CITY OF NEW BRAUNFELS, TEXAS, | § | |
| *Defendant*. | § | |

## DEFENDANT CITY OF NEW BRAUNFELS, TEXAS'S
## MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES Defendant City of New Braunfels, Texas (the "City"), and files this Motion for Summary Judgment and respectfully states and alleges as follows.

1.      By their lawsuit, Plaintiffs challenge the City's prohibition on short-term rentals of homes (typically done through websites such as Airbnb and Vrbo) in single-family and two-family residential-zoned districts within the City.  But municipalities have great deference in making zoning decisions within their city limits.  Short-term rentals—typically made to tourists and sometimes to partiers—can be rationally viewed as more likely to erode the residential character of a neighborhood, to increase crowds, traffic, trash, and noise, and to have other detrimental effects on the community.

2.      This Court already dismissed Plaintiffs' claims.  *See* Dkt. Nos. 20, 29.  Although the Fifth Circuit reversed, it did not disagree with this Court's legal analysis.  The Fifth Circuit simply allowed Plaintiffs "to engage in discovery."  *See* Dkt. No. 31.  Now that both sides have produced documents and been deposed, Plaintiffs' claims are again ripe for dismissal.

## FACTUAL BACKGROUND

**Zoning regulations adopted by the City**

3.      The Texas Legislature has granted Texas municipalities the right to adopt zoning regulations within their city limits "for the purpose of promoting the public health, safety, morals, or general welfare and protecting and preserving places and areas of historical, cultural, or architectural importance and significance."  TEX. LOC. GOV'T CODE § 211.001.  A city may divide into districts, with a view of encouraging the most appropriate use of land within its city limits.  *Id.* § 211.005.  A city may also regulate the location and use of buildings "for business, industrial, residential, or other purposes."  *Id.* § 211.003(a)(5).

4.      In compliance with Texas statutes, the City of New Braunfels adopted chapter 144 of its Code of Ordinances:

> The purpose of this chapter is to zone the entire area of the city limits and the districts in accordance with a comprehensive plan for the purpose of promoting health, safety, and the general welfare of the public.  The regulations and districts herein have been established in accordance with … Local Government Code ch. 211 and … have been established with reasonable consideration for the character of the district and its peculiar suitability for the particular uses, and with the view of … encouraging the most appropriate use of land throughout the community.

NEW BRAUNFELS, TEX., ORDINANCES ch. 144, § 1.1.  The City has divided its municipal area into various residential, commercial, and industrial zones, with detailed descriptions for each zoning type of what uses are permitted versus prohibited.  *See id.* §§ 3.4, 4.2.

**The City's zoning restriction on short-term rentals in certain of its residential districts**

5.      The City has adopted zoning regulations that govern short-term rentals within the City.  The City defines short-term rentals generally as being done (1) for compensation, (2) for overnight lodging, and (3) for 30 days or less (hereinafter, "STRs").  *See id.* § 5.17-2.  Plaintiffs complain about one single provision of the City's STR ordinances:

*"Short term rental within residential districts is prohibited."*

*Id.* § 5.17-3(a) (hereinafter, the "Ordinance").  Note that the term "residential districts," in this context, refers generally to single-family and two-family residential districts.  *See id.* § 5.17-2.

6.     In 2006, the City established the framework of its current zoning ordinances.  At that time, the City prohibited dwelling occupancy for less than 30 days in certain residential zones, but allowed for non-conforming rights for preexisting STRs.  *See* Dkt. No. 9-1 at pp. 1-9 (Ord. 2006-99).  In 2011, the City adopted the Ordinance with its current language, prohibiting non-grandfathered STRs within residential districts "to protect the character and boundaries of existing neighborhoods" and "to protect residential neighborhoods in New Braunfels."  *See id.* at pp. 10-18 (Ord. 2011-37).  In 2012, the City moved the STR provisions to their current location at chapter 144, section 5.17, after conducting "an exhaustive analysis of the current regulations."  *See id.* at pp. 19-34 (Ord. 2012-49).

**Plaintiffs' properties in residential districts where short-term rentals are prohibited**

7.     Plaintiffs are affluent landowners.[1]  Each of the Plaintiffs purchased property in a New Braunfels residential neighborhood for their personal residence.[2]  In addition to residing there, Plaintiffs can (and do) rent out their houses via long-term leases, but they wish to also have the option to earn revenues via STRs on their properties.[3]

8.     By this lawsuit, in an effort to engage in STRs at their properties, Plaintiffs seek to strike down the City's prohibition against non-grandfathered STRs in single-family and two-

---

[1]  *See* Ex. 8 (Depo. Tr. of Rafael Marfil) pp. 10, 17, 20, 26-27, 30-35; Ex. 9 (Depo. Tr. of Enrico Marfil) pp. 25-26, 29; Ex. 10 (Depo. Tr. of Naomi Marfil) pp. 11-12; Ex. 11 (Depo. Tr. of Douglas Wayne Mathes) pp. 4-6, 12-13; Ex. 12 (Depo. Tr. of Daniel Olveda) pp. 4-5, 8, 33; Ex. 13 (Depo. Tr. of Korey Rohlack) pp. 7, 12-13.
[2]  *See* Ex. 8 pp. 49, 57-59; Ex. 9 pp. 40, 45; Ex. 10 p. 35; Ex. 11 pp. 20-21, 43-44; Ex. 12 pp. 8-9, 11-14, 29; Ex. 13 p. 14.
[3]  *See* Ex. 8 pp. 71-72, 129-30; Ex. 9 pp. 46, 60-62; Ex. 10 p. 36; Ex. 11 pp. 35-36, 38; Ex. 12 pp. 19-21; Ex. 13 pp. 17-18.

family residential districts as "unconstitutional."  Notably, none of the Plaintiffs alleges that the Ordinance is a *retroactive* law.  After all, the Ordinance grandfathers existing STR use, whereas Plaintiffs purchased their properties and sought to engage in STRs after the City adopted the Ordinance.  Nor do any of the Plaintiffs contend they were denied *procedural* due process. Instead, Plaintiffs claim they have a constitutional right to compel the City to allow STRs both at their specific residential properties (an as-applied claim) and at *every* house, in *every* zoning district, in the *entire* City (a facial claim).

## ARGUMENT

### I.    The Ordinance satisfies the governing rational basis test.

9.    Municipal zoning should seldom be the concern of federal courts.  *See Shelton v. City of Coll. Station*, 780 F.2d 475, 477 (5th Cir. 1986).  The City's local regulation is presumed to be valid and will be sustained so long as the classification drawn thereby is rationally related to a legitimate governmental interest.  *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).  After all, the Constitution presumes that even "improvident" decisions will eventually be rectified by the democratic process.  *See id.*  Thus, under the rational basis test, the City's legitimate basis for its zoning decision need only be a "conceivable" one, and the zoning decision must be upheld if it is "at least debatable."  *See Shelton*, 780 F.2d at 482-83.  Three federal circuit court opinions confirm the Ordinance here must be upheld.

10.    *First*, 35 years ago, the Fifth Circuit affirmed the dismissal of rational-basis challenges to municipal restrictions on short-term use of residential property.  *See Jackson Court Condominiums v. City of New Orleans*, 874 F.2d 1070, 1078 (5th Cir. 1989).  In *Jackson*, the district court had upheld a municipal ban on time-sharing within certain residential districts at the summary judgment stage.  *See Jackson Court Condominiums v. City of New Orleans*, 665 F. Supp. 1235, 1236-37, 1254 (E.D. La. 1987).  The city had concluded that a "characteristic of

transients is that they do not have a sense of belonging to the neighborhood, and thus no neighborhood pride and commitment." *See id.* at 1238. The Fifth Circuit agreed, declaring, "Certainly the protection of residential [neighborhood] integrity is a legitimate objective of a zoning regulation." *See Jackson*, 874 F.2d at 1078. Also, in *Jackson*, the city had concluded that "transient attitudes can produce effects such as loudness, carelessness, littering and vandalism." *See Jackson*, 665 F. Supp. at 1238. Again, the Fifth Circuit agreed, declaring that the city's concern regarding an increase in noise, littering, and vandalism—which "might" be associated with short-term users—"was a legitimate concern of the city and was [at least] debatable." *See Jackson*, 874 F.2d at 1078.

11.    The same legitimate governmental concerns regarding short-term use of residential properties that enabled a ban on time-sharing in New Orleans, Louisiana neighborhoods apply equally to enable a ban on STRs in New Braunfels, Texas neighborhoods.

12.    ***Second***, in 2022, the Fifth Circuit again approved the same legitimate bases relied on in *Jackson* to support municipal restrictions on STRs at residential properties. *See Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 328-29 (5th Cir. 2022). Due to a residency requirement, the Fifth Circuit struck down a municipal ban on STRs under the dormant Commerce Clause, which applies a "virtually per se invalid" standard of review. *See id.* at 328. However, in doing so, the Fifth Circuit entered two holdings that confirmed an STR ban which does not contain residency requirements (as here) would easily satisfy the rational basis test. First, the Fifth Circuit approved the very legitimate bases for an STR ban relied on here, holding "[t]here's no question" that "preventing nuisances … and protecting neighborhoods' residential character" are "legitimate local purposes." *See id.* Second, in concluding that nondiscriminatory alternatives existed to a residency requirement for STRs, the Fifth Circuit held, "there's an

obvious and straightforward alternative to discrimination:  cap the share of housing units that can be used as STRs." *See id.* at 329.

13.     A cap on STRs is precisely what New Braunfels has done.  While allowing STRs in most neighborhoods, the City has generally capped them in single-family and two-family residential districts at the level in which they were present in 2011.

14.     ***Third***, also in 2022, the Third Circuit affirmed the dismissal of challenges to a municipal ban against STRs under the rational basis test.  *See Nekrilov v. City of Jersey City*, 45 F.4th 662, 679-80 (3d Cir. 2022).  In that case, the district court relied on the same legitimate bases as here:  "protect the residential character of neighborhoods and reduce nuisance activity associated with short-term rentals."  *See id.*  In light of these "legitimate state interests," the rational basis test was held to be "easily satisfied."  *See id.* at 680-81.

15.     Notably, this Court has already agreed with these holdings.  *See* Dkt. No. 20 at pp. 13-15.  Moreover, all other federal district courts, too, unanimously hold that bans and regulations against STRs satisfy the low bar of the rational basis test.  *See MDKC, LLC v. City of Kansas City*, No. 4:23-cv-00395, 2023 U.S. Dist. LEXIS 176808, at *25-26 (W.D. Mo. Oct. 2, 2023); *Short Term Rental Alliance of San Diego v. City of San Diego*, No. 22cv1831, 2023 U.S. Dist. LEXIS 102156, at *30-33 (S.D. Cal. June 12, 2023); *Moskovic v. City of New Buffalo*, No. 1:21-cv-674, 2022 U.S. Dist. LEXIS 197730, at *50-53, 55-57 (W.D. Mich. Oct. 31, 2022); *Selvaggi v. Borough of Pt. Pleasant Beach*, No. 22-00708, 2022 U.S. Dist. LEXIS 93746, at *15-17 (D.N.J. May 25, 2022); *King v. City of Marion*, No. 3:19-cv-00207, 2020 U.S. Dist. LEXIS 16805, at *31 (E.D. Ark. Feb. 3, 2020); *Weisenberg v. Town Bd. of Shelter Island*, 404 F. Supp. 3d 720, 733-34 (E.D.N.Y. 2019); *Karol v. City of N.Y.*, 396 F. Supp. 3d 309, 322-23 (S.D.N.Y. 2019); *Murphy v. Walworth County*, 383 F. Supp. 3d 843, 846-47, 851 (E.D. Wis. 2019).

Because the City neither based its Ordinance on owner residency (a Commerce Clause issue) nor prohibited pre-existing STR use (a retroactivity issue), the Ordinance is constitutional.

16.     As all these cases confirm, a federal judge can readily acknowledge that the more short-term the resident, the less likely he is to engage in community betterment or to consider any adverse impacts from his visit on the surrounding neighborhood.  Do homeowners generally treat their homes with greater care than renters?  Of course they do.  We all know that. Similarly, are long-term renters more invested in a neighborhood, and the cares and concerns of their next-door neighbors they see every week, than are weekend visitors in town for a raucous bachelor party at an STR?  Of course they are.  These common-sense legislative distinctions do not require more than "momentary reflection" to arrive at the inescapable conclusion that a city has a rational basis for distinguishing between long-term tenants and STRs.  The equal protection and due process clauses do not require a court to ignore common sense and suspend disbelief when reviewing a city's legislative classifications.  The standard is *the opposite*—whether there is any debatable basis for the legislative classification.  If there is, then the classification survives rational-basis review.

17.     Accordingly, there are multiple conceivable rational bases that support the City's Ordinance and that cannot be negated, including the three rational bases set forth below.

**A.     Rational Basis: preserving the neighborhood character of single-family and two-family residential districts.**

18.     Barring short-term leasing from single-family and two-family residential districts can preserve those neighborhoods' character.  While a one-night stay in a home may technically be a "residential" use, no one would rationally contend such use is of the same character as a 20-year stay.  As anyone who has lived in the same home for multiple years can attest, the longer a neighbor resides next door, the more likely people's lives will become intertwined, including

borrowing household items, pet-sitting, babysitting, and backyard gatherings. And as anyone who has used Airbnb or Vrbo for a week-long stay can attest, no community investment occurs. One could readily surmise that not one Airbnb or Vrbo tourist in the history of the company has attended an HOA meeting during a few-nights' stay.

19.      Multiple courts have recognized this rational basis in upholding regulations against STRs. As one California court observed three decades ago comparing long-term tenants with short-term tenants:

> Short-term tenants have little interest in public agencies or in the welfare of the citizenry. They do not participate in local government, coach little league, or join the hospital guild. They do not lead a scout troop, volunteer at the library, or keep an eye on an elderly neighbor. Literally, they are here today and gone tomorrow—without engaging in the sort of activities that weld and strengthen a community.

*Ewing v. City of Carmel-By-The-Sea*, 234 Cal. App. 3d 1579, 1591 (Ct. App. 1991). As the Pennsylvania Supreme Court noted more recently:

> The permanence and stability of people living in single-family residential zoning districts creates a sense of community, cultivates and fosters relationships, and provides an overall quality of a place where people are invested and engaged in their neighborhood and care about each other.

*Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 207 A.3d 886, 900 (Pa. 2019). The Iowa Supreme Court has recognized the same rational basis:

> We agree governing bodies have a legitimate interest in promoting and preserving neighborhoods that are conducive to families—particularly those with young children. Quiet neighborhoods with a stable population and low traffic are laudable goals.

*Ames Rental Prop. Ass'n v. City of Ames*, 736 N.W.2d 255, 260-61 (Iowa 2007) (citations omitted).

20.      The potential communal harm from STRs is well-recognized. *See, e.g.*, Laiyang Ke, *et al.*, *Airbnb and neighborhood crime*, PLOS ONE 16(7) (July 14, 2021) (finding increase

in crime due to STRs' erosion of neighborhood social organization and failure "to contribute to critical neighborhood social dynamics"); Nathan P. Bettenhausen, *There Goes the Neighborhood: Regulating the Growing Short-Term Rental Industry*, 57 ORANGE CTY. LAWYER 16, 19 (July 2015) (failing to regulate STRs would "risk endangering the residential character of their communities").

21.     Plaintiffs' own experiences at STRs confirm this reality, that short-term tenants do not contribute to the lived-in character of the surrounding neighborhood.

> Q.     And when you're visiting somewhere and staying at a short-term rental are you getting involved in neighborhood gatherings, for instance?
>
> A.     No.
>
> Q.     Are you attending HOA meetings?
>
> A.     No.
>
> Q.     You're generally -- when you're at the short-term rental you're there to visit the town as a tourist, right?
>
> A.     Correct.
>
> Q.     And you're not making friends with neighbors the way you do when you're actually living somewhere.  Is that fair?
>
> A.     Yes.

Ex. 10 p. 29.  As another of the Plaintiffs conceded, community involvement when staying at an STR is no different from when staying at a hotel.  Ex. 8 pp. 39-40.

22.     Plaintiffs' experiences at their own residences equally confirm this reality. Plaintiffs Enrico and Naomi Marfil made good friends and playmates for their children where they lived for five years, but could not even give a name of any New Braunfels neighbor despite owning that rental property since 2018.  Ex. 9 pp. 5, 16, 19; Ex. 10 pp. 8-9, 32-34.  Plaintiff Daniel Olveda described his good experience living at his New Braunfels property, getting to know his residential neighbors and nearby local businesses.  Ex. 12 p. 24.  When pressed,

Plaintiff Douglas Mathes could not identify STRs' benefits to the surrounding neighborhood, *see* Ex. 11 p. 52, and then conceded:

> Q.     So, in other words, it can be a good thing to get to know your neighbors better the more you've been somewhere, right?
>
> A.     It can be, yeah, for sure.

*Id.* p. 56.

23.     It bears repeating that both the Fifth Circuit and this Court itself have already endorsed this rational basis.  *See Hignell-Stark*, 46 F.4th 328 (agreeing that "protecting neighborhoods' residential character" is a legitimate local purpose in regulating STRs); Dkt. No. 20 at p. 14 (upholding the Ordinance in this case due to the rational basis of "preserv[ing] the residential nature of certain areas of the city").  This governmental interest alone is sufficient for this Court to grant summary judgment in favor of the City.

**B.     Rational Basis: minimizing nuisance-type behavior of tourists and other short-term visitors.**

24.     Barring short-term leasing from single-family and two-family residential districts diminishes tourists' nuisance-type behavior occurring in those neighborhoods.  New Braunfels' Ordinance declares this rational basis:  "This section is intended to … ensur[e] that [STR] use does not create adverse impacts to surrounding neighborhoods due to excessive traffic, noise, and density."  NEW BRAUNFELS, TEX., ORDINANCES ch. 144, § 5.17-1.  It is rational for a city to believe that guests residing in a home for only a few days are less likely to worry about their reputation in the community, including such issues as crowds, noise, and trash.  *See Nekrilov*, 45 F.4th at 680-81.

25.     A prospective buyer of a house, upon learning that both sides of the property are listed on Airbnb, would likely opt not to make that house his family home.  Perhaps those surrounding houses leased via Airbnb would have presented no nuisance-type issues over the

ensuing years, and perhaps long-term neighbors might create their own noise issues, but no one would accuse the prospective buyer of being *irrational* in declining to purchase that house. It is entirely rational to view short-term-leased houses as (1) creating the frustrating uncertainty of a rental-by-rental potential for excessive nighttime noise and (2) reducing the potential for the neighborly camaraderie that one often hopes for when joining a new neighborhood. Plaintiffs concede that rationality.

> Q.    Don't you agree that it could be a reasonable position for someone to take
>        that they prefer not to have a short-term rental next door?
>
> A.    I would assume it could be reasonable, yeah.

Ex. 12 p. 91. Others' experiences reflect that rationality. *See, e.g.*, Myah Taylor, *Plano has a short-term rental problem*, DALLAS MORNING NEWS (Feb. 17, 2023) (next door neighbor on each new STR tenant: "Is this going to be a day where I'm going to have to call the police?").

26.    Indeed when the Marfils used their property as an STR—until discovered and stopped by the City—the STR tenants threw late-night parties, according to a neighbor:

> Since Mr. Marfil has purchased the home behind me he has illegally rented the
> home out as an STR…. During this time we have had renters up partying until
> after 4:00 am. This is a nuisance and it is interrupting my family's sleep….

Ex. 4 at CONB 035519.

27.    This potential harm of nuisance-type behavior occurring at STRs is well-recognized.

> Long-term renters really do have some incentive to care about the neighborhood's
> long-run comity and infrastructure, whereas short-term renters may have little to
> no such incentive. Further, some Airbnb hosts are renters themselves who are
> subletting a long-term rental property to short-term travelers, which may further
> shield the ultimate property owners from bearing the costs faced by immediate
> neighbors.

Josh Bivens, *The economic costs and benefits of Airbnb*, ECON. POLICY INSTITUTE p. 18 (Jan. 30, 2019).

> As short-term rental listings increase in an area, locals experience problems such as "unfamiliar cars blocking driveways, late night parties on formerly quiet streets, and concerns about child safety in an environment with fewer familiar eyes on the street."

Allyson E. Gold, *Community Consequences of Airbnb*, 94 WASH. L. REV. 1577, 1581-82 (Dec. 2019).  Indeed, the company Airbnb basically admitted as much in its 2020 public SEC filing:

> We have no control over or ability to predict the actions of our users … either during the guest's stay, experience, or otherwise, and therefore, we cannot guarantee the safety of our hosts, guests, and third parties.  The actions of hosts, guests, and other third parties have resulted and can further result in fatalities, injuries, other bodily harm, fraud, invasion of privacy, property damage [and] discrimination ….

Airbnb, Inc., SEC Form S-1 Registration Statement, p. 45 (Nov. 16, 2020).

28.    In an effort to downplay these concerns, in their prior pleadings Plaintiffs have cited three surveys in various cities as supposedly negating the City's nuisance concerns here.  But all three support the City's position instead.  The 2016 California report discussed only one town with more than a year of nuisance data on STRs, Santa Barbara, which showed fewer nuisance calls for STR properties during the years 2006-09, but *more* during the years 2010-15.  The 2020 New York City study found fewer "residential noise complaints" due to STRs but a significant *increase* in "street noise complaints."  The 2021 Dallas, Texas study acknowledged that STR properties caused an *increase* in 311 and 911 calls and that there were multiple STR properties recognized as "problematic" by the residential neighbors.[4]  Thus, Plaintiffs' own studies confirm it could be rational for a city to choose *either* policy direction, prospectively allowing *or* prohibiting STRs.  New Braunfels has chosen a balanced approach, allowing STRs

---

[4]    *See, e.g.*, Eva Ruth Moravec, *Short-Term Rentals Cause a Long-Term Mess*, TEXAS OBSERVER (Sept. 11, 2023) (describing gunshots and sex trafficking at STRs in Dallas area); Lori Brown, *Nw. Dallas neighborhood frustrated with short-term rentals*, FOX 4 (July 12, 2022) (after an STR tenant's party with drugs and armed security guard, STR property owner replies, "It is a free country").

generally, but prohibiting new such rentals in one- and two-family neighborhoods. That is inherently rational.

29.     One of the Plaintiffs conceded that, in his residential neighborhood adjacent to Schlitterbahn—with the Ordinance fully "in place"—he has never had any problems with unruly behavior, noise, drunkenness, or trash in the neighborhood. Ex. 11 pp. 119-20. This rational basis alone is sufficient to grant summary judgment in favor of the City.

### C.     Rational Basis: reducing STRs' negative impact on the availability of housing in the community.

30.     The economic costs of STRs provide another rational basis for its prohibition in residential districts. *See* Bivens, *The economic costs and benefits of Airbnb*, ECON. POLICY INSTITUTE (concluding that STRs have economic costs outweighing their benefits, including raising local housing costs, complicating tax collection, and benefiting primarily higher-wealth households).

31.     One particularly well-documented result of STRs in a community is a decrease in affordable housing and increase in rents in the community. *See, e.g.*, Peter Holley, *Hurricanes Couldn't Destroy Galveston's Spirit. The Vacation Rental Boom Just Might*, TEXAS MONTHLY (Sept. 30, 2021); Murray Cox & Kenneth Haar, *Platform Failures: How short-term rental platforms like Airbnb fail to cooperate with cities and the need for strong regulations to protect housing*, GUE/NGL STUDY (Dec. 9, 2020); Gold, *Community Consequences of Airbnb*, 94 WASH. L. REV. at 1589-93; Diamond Smith, *Renting Diversity: Airbnb as the Modern Form of Housing Discrimination*, 67 DEPAUL L. REV. 581 (Spring 2018); Karen Horn & Mark Merante, *Is home sharing driving up rents? Evidence from Airbnb in Boston*, 38 EJHECO 14-24 (Dec. 2017); Dayne Lee, *How Airbnb Short-Term Rentals Exacerbate Los Angeles's Affordable*

*Housing Crisis: Analysis and Policy Recommendations*, 10 HARV. L. & POL'Y REV. 229, 235-40 (Winter 2016).

32.    This rational basis, too, is sufficient to grant summary judgment in favor of the City.  *See Karol v. City of N.Y.*, 396 F. Supp. 3d 309, 323 (S.D.N.Y. 2019) (dismissing claims against STRs based on legitimate governmental interest in ensuring permanent housing stock).

## II.    The Ordinance satisfies the rational basis test as applied to Plaintiffs' properties.

33.    In addition to a claim of facial unconstitutionality, Plaintiffs claim that the Ordinance is unconstitutional "as applied" to them because their properties "are in high traffic areas surrounded by other short-term rentals."  *See* Dkt. No. 39 ¶¶ 71, 85, 95, 105.  That is not correct.  The attached maps show their properties are in residential districts with very few permitted STRs.  *See* Exs. 2-3 & 5-6.  Thus, the same rational bases that support the Ordinance in general also support the Ordinance as applied to Plaintiffs' residential properties.

34.    The attached maps further reveal that Plaintiffs' real complaint is simply that their properties are close to the edge of a residential zoning district.  But under governing law, that is not a valid basis to strike down the zoning category of a specific property.

> [T]he lots in this case are on the perimeter [of the zoning district].  We feel that this is a distinction without a difference.  If the zoned area may be encroached upon from the edge, the effect thereof is to cause the comprehensive plan to collapse like the fall of a row of dominoes when the first in the row is knocked over.

*Hunt v. City of San Antonio*, 462 S.W.2d 536, 540 (Tex. 1971).

35.    With respect to Mathes's and the Marfils' residential lots, it is true that these three properties are on blocks directly across Union Avenue from the waterpark Schlitterbahn.  *See* Ex. 3.  But that does not detract from the residential nature of their large residential-zoned area. *See* Ex. 2.  Plaintiffs fail to note that Schlitterbahn does not operate during the school year.  It is open daily during June, July, and the first half of August, but is open only on weekends during

April, May, the second half of August, and September, and then is closed October through March.  *See* https://www.schlitterbahn.com/new-braunfels/schedule.  Even during the busy summer months, the waterpark is closed by 8pm at the latest, at which point the crowds die down, and the only street noise is sirens from a nearby hospital.  *See id.*; Ex. 8 p. 53; Ex. 10 pp. 17, 19-20.

36.    Moreover, when the Marfils applied to the City to be able to conduct STRs, multiple neighbors surrounding Mathes's and the Marfils' properties opposed their application, pointing to the residential nature of the neighborhood.

- "It is a fine neighborhood, happy and friendly."

- "This is an extremely quiet, nice, & upstanding, very special neighborhood that needs to be preserved at all costs.  All neighbors have fought, throughout the decades, to preserve such a special neighborhood, and keep out all creep, of commercial development, and especially any/all overnight rentals."

- "We would like to keep this area as residential as possible to continue to foster an environment of a 'small friendly town.'"

- "I want to maintain a residential neighborhood where family comes first."

- "We're a pretty tight neighborhood, with very young children."

- "We do not want our neighborhood to be commercialized."

- "Let our neighborhood remain a neighborhood."

- "This respectable neighborhood is where our German Ancestors first settled."

- "If a firm line is not kept down the middle of Union, such creep will keep creeping until this beautiful, historic, charming neighborhood is just a bunch of tattoo parlors, food truck lots, gas stations and more."

- "This is an up and coming family neighborhood."

- "I have been living here for 14 years.  I'm against the zone change."

- "I have lived here for 48 years and I love New Braunfels so let's keep our residential neighborhood."

Ex. 4.  In fact, in Mathes's and the Marfils' neighborhood, across the entirety of the single-family and two-family residential districts stretching east from Union Avenue, *see* Ex. 2, there is *only one* STR, *see* Ex. 3.

37.    Plaintiffs themselves have acknowledged the residential nature of their properties. Rafael Marfil admitted that he and his family could potentially decide to live at their New Braunfels property instead of renting it out.  Ex. 8 pp. 57-58.  Enrico and Naomi Marfil plan to keep their New Braunfels property as their "vacation home."  Ex. 10 p. 35.  Mathes purchased his New Braunfels property for his family's own use.  Ex. 11 pp. 20-21.

38.    With respect to Olveda's and Plaintiff Korey Rohlack's residential lots, it is true that these two properties are close to the "line" where commercial properties adjacent to Business Loop 46 begin.  *See* Ex. 5; Ex. 12 p. 67.  But that does not detract from the residential nature of their large residential-zoned area.

39.    Olveda and Rohlack also applied to the City to be able to conduct STRs, and multiple neighbors opposed their application, pointing to the residential nature of the neighborhood.

- "Requested zoning is not consistent with adjacent neighborhood properties."

- "Increase in traffic which already heavy."

- "We do not wish to have commercial activity behind our house and the associated issues with it."

- "This is obviously a move to put the city's and our neighbors' opportunity to earn money over the rights of resident homeowners to live in peace."

- "If their intent is … to allow nightly rentals, I would not be supportive of that."

- "Not many want this residential area to change.  We certainly do not[;] we love the small town feeling."

Ex. 7.  In fact, in Olveda's and Rohlack's neighborhood, across the entirety of the single-family and two-family residential districts stretching west from Business Loop 46, *see* Ex. 5, there is *not one single* STR, *see* Ex. 6.

40.     Both Olveda and Rohlack have agreed theirs is a residential neighborhood worth living in long-term.  Olveda lived there from 2017 to 2020 and declared it a "world class location" to live, as reflected by its prior owner living there for 14-15 years, and further reflected by Olveda's desire to keep it until his daughter is old enough to live there.  Ex. 12 pp. 8-9, 11-13, 23, 29, 78.  Rohlack's property is an empty lot, but he plans to build a house as his own personal residence.  Ex. 13 pp. 14, 17-18.  As Rohlack conceded regarding his zoning district:

> Q.     Do you know whether any of those [surrounding] properties have families with kids living in them?
>
> A.     It is a residential neighborhood.  I would assume so since it is residential homes.
>
> ….
>
> Q.     Do you think your property is a good location for a short-term rental?
>
> A.     It is a good location for a residence and for those who might want to come and stay with it for short-term, long-term and enjoy it as a residence.

*Id.* pp. 26, 41.

41.     In sum, the same rational bases that defeat Plaintiffs' claim that the Ordinance is facially unconstitutional equally defeat Plaintiffs' as-applied claims.  *See Lee v. Whispering Oaks Home Ass'n*, 797 F.Supp. 2d 740, 750-53 (W.D. Tex. 2011) (as-applied challenge to zoning decision requires the decision to be arbitrary and capricious, lacking any rational basis).

## III.    The Ordinance does not violate the *Patel* burdensomeness test under the Texas Constitution.

42.     One other test besides the generally-applicable rational basis test may apply under the Texas due process clause.   Certain economic regulations may violate the Texas

Constitution's due process clause if their "actual, real-world effect as applied to the challenging party … is so burdensome as to be oppressive in light of the governmental interest." *See Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 87 (Tex. 2015). However, there are multiple bases for summary judgment against this claim that the Ordinance is unconstitutional as applied to them.

43.    First, *Patel*'s recent "oppressiveness" test has not been applied to zoning regulations, but only to laws that operate as an absolute bar against operating in one's chosen profession. *See id.* at 74 ("to earn an honest living in the occupation of one's choice"). The Texas Supreme Court has held that *Patel* is to be "properly limited to" its particular context. *See Hegar v. Tex. Small Tobacco Coalition*, 496 S.W.3d 778, 788 n.35 (Tex. 2016). Thus, Texas appellate courts have consistently limited *Patel*'s oppressiveness test to an absolute bar against an individual's chosen profession. *See, e.g.*, *Tex. Alcoholic Beverage Comm'n v. Live Oak Brewing Co.*, 537 S.W.3d 647, 656-57 (Tex. App.—Austin 2017, pet. denied) (*Patel* claim is for law that "prevented [plaintiffs] from operating within their chosen trade"); *Transformative Learning Sys. v. Tex. Educ. Agency*, 572 S.W.3d 281, 293 (Tex. App.—Austin 2018, no pet.) (*Patel* claim is for laws that "erect an economic barrier of entry into a given profession").

44.    Plaintiffs admit that if the City is correct regarding the above summary of cases applying *Patel*, then their *Patel* claim fails.

> If the City is correct that the burdensome test is limited to "right to earn a living claims," then Plaintiffs—who have expressly disavowed any "right to earn a living claims"—will be barred as a matter of law from raising the issue of burden at trial or summary judgment.

Dkt. No. 44 at pp. 4-5.

45.    Second, a *Patel* claim depends on a vested right. *See Tex. Dep't of State Health Servs. v. Crown Distrib.*, 647 S.W.3d 648, 654-56 (Tex. 2022) (due process requires a vested

right).  The Sixth Circuit recently upheld a prohibition against STRs under this very analysis, holding that homeowners who did not apply for STR permits prior to an ordinance prohibiting such new permits lacked "a legitimate claim of entitlement" to the permits to create a protected property interest in them.  *See Moskovic v. City of New Buffalo*, No. 23-1165, 2023 U.S. App. LEXIS 33273, at *12 (6th Cir. Dec. 14, 2023).  Plaintiffs, too, having purchased their properties and then applying for a zoning change *after* the Ordinance was adopted, lack a property interest sufficient to assert due process claims.

46.    Third, any burden on Plaintiffs is minimal, particularly when measured against the legitimate City interests (discussed above) in supporting thriving residential neighborhoods, minimizing short-term visitors' nuisance behavior in those neighborhoods, and preserving affordable housing for local residents.  Plaintiffs can freely rent their properties to long-term tenants, or if that is unworkable for any reason, they can freely sell their properties and purchase at a new location in the City (or even just outside the City) where STRs are still allowed.  Within the City, this includes multiple other zoning districts, including condominiums and other such residences in multi-family zones.

47.    Plaintiffs' deposition testimony does not reflect any significant burden from the Ordinance.  Rafael Marfil owns six duplexes and two apartment complexes in San Antonio where he can engage in STRs if he desires, and meanwhile he successfully rents out his New Braunfels property to long-term tenants, with annual revenues frequently exceeding expenses. Ex. 8 pp. 22, 71-72.  For Enrico and Naomi Marfil's next-door residential property, annual revenues from long-term leases are "enough" to pay their property expenses, and they joined this lawsuit merely to "have more flexibility" with leasing to tenants.  Ex. 10 pp. 27-28, 36.  Mathes also rents out both houses on his New Braunfels property on a long-term basis, and has opted not

to sell because of the unleased garage apartment that he and his family "really enjoy" several times a year.  Ex. 11 pp. 35-36, 38, 43-44.  Olveda rents out his New Braunfels house to long-term tenants, and plans to keep the property in his family even if he "can't do short-term rentals."  Ex. 12 pp. 19-21, 29.  Rohlack, when he bought his New Braunfels property, and still today, plans to build a house and live there regardless of whether STRs are permitted.  Ex. 13 pp. 17-18.

48.     Plaintiffs' theory that prohibiting STRs is so unreasonably burdensome that it qualifies as "oppressive" has no merit.

> The plaintiffs can lease the properties on a long-term basis, live at the properties, or sell the properties.  There is no total taking where the government seizes only one strand in the "bundle" of property rights.

*Nekrilov*, 45 F.4th at 671.  There is nothing inherently oppressive about requiring home rentals in residential neighborhoods be made to tenants whose use comports more closely to a residential character, rather than being done for tourist or other short-term use.

## PRAYER

WHEREFORE, Defendant City of New Braunfels, Texas respectfully prays that the Court grant this Motion for Summary Judgment, enter a take-nothing judgment against Plaintiffs' claims, and for all other and further legal and/or equitable relief to which Defendant City of New Braunfels, Texas is justly entitled.

Respectfully submitted,

By: _____
      Ryan D. V. Greene
      State Bar No. 24012730
      TERRILL & WALDROP
      810 W. 10th Street
      Austin, Texas 78701
      (512) 474-9100
      (512) 474-9888 (fax)
      rgreene@terrillwaldrop.com

ATTORNEYS FOR DEFENDANT
CITY OF NEW BRAUNFELS, TEXAS

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2024, Defendant City of New Braunfels, Texas's Motion for Summary Judgment was electronically filed with the Clerk of the Court using the CM/ECF system and served on all attorneys of record via the CM/ECF system and/or via electronic mail.

Robert Henneke
Chance Weldon
Christian Townsend
Clayton Way Calvin
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701

J. Patrick Sutton
THE LAW OFFICE OF J. PATRICK SUTTON
1505 W. 6th Street
Austin, TX 78703

_____
Ryan D. V. Greene