## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| RAFAEL MARFIL, VERGE PRODUCTIONS LLC, ENRICO MARFIL, NAOMI MARFIL, KOREY RHOLACK, DANIEL OLVEDA, and DOUGLAS WAYNE MATHES, | § § § § § | Case No. 6:20-cv-00248-ADA-JCM |
| *Plaintiffs*, | § § | |
| vs. | § § | |
| THE CITY OF NEW BRAUNFELS, TEXAS, | § § | |
| *Defendant*. | § | |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................................... iv

INTRODUCTION .................................................................................................. 1

STATEMENT OF FACTS ..................................................................................... 1

    *Background* .......................................................................................................... 1

    *The History of Short-term Rentals in New Braunfels* ....................................... 4

    *The City Bans New Short-term Rentals* ............................................................ 5

    *Plaintiffs' Injuries* ............................................................................................. 5

    *Prior Proceedings in this Court* ........................................................................ 8

    *This Court's Original Decision* ......................................................................... 9

    *Appeal to the Fifth Circuit* ............................................................................. 10

    *Posture After Remand* .................................................................................... 11

STANDARD OF REVIEW ................................................................................... 12

ARGUMENT ....................................................................................................... 13

    I.     THE ORDINANCE ARBITRARILY DENIES PLAINTIFFS'
             PROPERTY RIGHTS IN VIOLATION OF ARTICLE 1,
             SECTION 19 OF THE TEXAS CONSTITUTION ............................... 13

          A.     Prohibiting short-term rentals is not rationally related
                  to nuisance abatement ............................................................... 15

          B.     Even if there were some marginal connection between
                  banning short-term rentals and a legitimate
                  government interest, banning short-term rentals under
                  these circumstances is unduly burdensome given any
                  marginal government interest at stake ...................................... 17

II.    THE ORDINANCE ARBITRARILY DENIES PLAINTIFFS' PROPERTY RIGHTS IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION ................................................................ 18

    A.    The Ordinance is not rationally related to nuisance abatement ................................................................ 19

    B.    The Ordinance is not rationally related to preserving "residential character." ................................................ 20

    C.    The Ordinance is not rationally related to housing affordability ................................................................ 23

    D.    The Ordinance is not rationally related to school enrollment ................................................................ 24

    E.    Community opposition alone is not a legitimate basis to ban a traditional residential use of property from residential areas ................................................................ 25

III.   THE ORDINANCE ARBITRARILY DENIES PLAINTIFFS' PROPERTY RIGHTS IN VIOLATION OF THE EQUAL PROTECTION CLAUSES OF THE UNITED STATES AND TEXAS CONSTITUTIONS ................................................ 26

CONCLUSION ................................................................ 28

CERTIFICATE OF SERVICE ................................................ 29

# INDEX OF AUTHORITIES

***Cases:***                                                            ***Page(s):***

*Aladdin's Castle, Inc. v. Mesquite,*
    630 F.2d 1029 (5th Cir. 1980) ......................................................................... 25

*Big Tyme Invs., L.L.C. v. Edwards,*
    985 F.3d 456 (5th Cir. 2021) ........................................................................... 17

*Bradford v. State,*
    22 Ala. App. 171 (1927) ..................................................................................... 2

*Carnegie v. Perkins,*
    191 N.C. 412 (1926) ........................................................................................... 2

*Catherine H. Barber Mem'l Shelter, Inc. v. Town of N. Wilkesboro Bd. Of
    Adjustment of N. Wilkesboro,*
    576 F. Supp. 3d 318 (W.D.N.C. 2021) .......................................................... 17

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ......................................................................................... 12

*City of Cleburne v. Cleburne Living Ctr.,*
    473 U.S. 432 (1985) .................................................................... 17, 19, 25, 26

*City of Dallas v. Stewart,*
    361 S.W.3d 562 (Tex. 2012) ........................................................................... 14

*City of Grapevine,*
    651 S.W.3d 317 (Tex. App.—Fort Worth, 2022) ....................................... 4, 13

*Coalson v. Holmes,*
    111 Tex. 502, 240 S.W. 896 (1922) ................................................................. 2

*Draper v. City of Arlington,*
    629 S.W.3d 777 (Tex. App.—Fort Worth, 2021) ........................................... 13

*Duckett v. Cedar Park,*
    950 F.2d 272 (5th Cir. 1992) ......................................................................... 12

*Duffy v. Leading Edge Prods., Inc.,*
    44 F.3d 308 (5th Cir. 1995) ........................................................................... 12

*Esquivel v. McCarthy*,
No. 3:15-CV-1326-L, 2016 U.S. Dist. LEXIS 144260
(N.D. Tex. Oct. 18, 2016).................................................................... 12

*Euclid v. Ambler Realty Co.*,
272 U.S. 365 (1926) ...................................................... 18, 19, 21

*Hawai'i Legal Short-Term Rental All. v. City & Cnty. of Honolulu*,
No. 22-cv-247-DKW-RT, 2022 U.S. Dist. LEXIS 187189
(D. Haw. Oct. 13, 2022)................................................................ 2, 21

*Horton v. Handvil*,
41 N.J. Eq. 57 (1886).......................................................................... 2

*Hunt v. San Antonio*,
462 S.W.2d 536 (Tex. 1971) ............................................................ 27

*JBrice Holdings, L.L.C. v. Wilcrest Walk Townhomes Ass'n*,
644 S.W.3d 179 (Tex. 2022) ............................................................. 2

*Marfil v. City of New Braunfels*,
70 F.4th 893 (5th Cir. 2023) .......................................... 10, 15, 18, 22

*Mayhew v. Town of Sunnyvale*,
964 S.W.2d 922 (Tex. 1998) ........................................................... 14

*Mikeska v. City of Galveston*,
451 F.3d 376 (5th Cir. 2006) ................................................ 18, 19, 26

*Milton v. United States*,
36 F.4th 1154 (Fed. Cir. 2022)........................................................ 14

*Nectow v. Cambridge*,
277 U.S. 183 (1928) .................................................................. 22, 28

*Patel v. Tex. Dep't of Licensing & Regulation*,
469 S.W.3d 69 (Tex. 2015) ............................................................. 14

*Ragas v. Tenn. Gas Pipeline Co.*,
136 F.3d 455 (5th Cir. 1988).......................................................... 12

*Raymond v. Strickland*,
124 Ga. 504 (1905) ........................................................................... 2

*R.R. Com. of Texas v. Miller,*
    434 S.W.2d 670 (Tex. 1968) ............................................................ 26

*Severance v. Patterson,*
    370 S.W.3d 705 (Tex. 2012) ............................................................ 14

*Skotak v. Tenneco Resins, Inc.,*
    953 F2d 909 (5th Cir. 1992) ............................................................ 13

*Slaby v. Mt. River Estates Residential Ass'n,*
    100 So. 3d 569 (Ala. Civ. App. 2012) ........................................ 2, 21

*Spann v. City of Dallas,*
    235 S.W. 513 (Tex. 1921) ................................................................ 13

*St. Joseph Abbey v. Castille,*
    712 F.3d 215 (5th Cir. 2013) ...................................................... 24, 27

*Tarr v. Timberwood Park Owners Ass'n,*
    556 S.W.3d 274 (Tex. 2018) .................................................. 2, 20, 21

*Vill. of Tiki Island v. Ronquille,*
    463 S.W.3d 562 (Tex. App.—Galveston, 2015) .......................... 4, 13

*Wash. ex. rel. Seattle Title Tr. Co. v. Roberge,*
    278 U.S. 116 (1928) ........................................................................ 19

*Williams v. State,*
    41 S.W.2d 298 (Tex. Crim. App. 1932) ............................................ 2

*Wineman v. Phillips,*
    93 Mich. 223 (1892) .......................................................................... 2

*W. U. Place v. Ellis,*
    134 S.W.2d 1038 (Tex. 1940) ...................................................... 14, 17

*Yates v. Milwaukee,*
    77 U.S. (10 Wall.) 497 (1870) .......................................................... 15

*Zaatari v. City of Austin,*
    615 S.W.3d 172 (Tex. App.—Austin, 2019) ............................2, 3, 4, 13, *passim*

**Rules:**

Fed. R. Civ. Proc. 12(b)(6) .................................................................................. 9

Fed. R. Civ. Proc. 56(a) .................................................................................... 12

**Other Authorities:**

Christina Sandefur, *Turning Homeowners into Outlaws: How Anti-Home
      Sharing Regulations Chip Away at the Foundation of an American
      Dream*, 39 U. Haw. L. Rev. 395, 396 (2017) ...................................................... 1

## INTRODUCTION

Like countless other Texans, Plaintiffs wish to rent their houses to other families while they are not using them. These so-called "short-term rentals" have been part of Texas residential communities for generations and provide an important source of flexibility and income to ordinary homeowners.

In recent years, both Texas and Federal courts have found that short-term leasing is subject to constitutional protections. Indeed, bans on short-term rentals in Austin, Grapevine, Tiki Island, Dickinson, Hollywood Park, and New Orleans have all been struck down or enjoined.

In the face of this history and legal precedent, the City of New Braunfels prohibits all new short-term rentals in residentially zoned districts. The City claims this restriction is constitutional because short-term rentals are allegedly correlated with nuisance behaviors and therefore incompatible with residential use. But as the Fifth Circuit already held in this case, evidence matters when it comes to restrictions on property rights. A City may not treat a traditional use of property as a nuisance when it is not so in fact.

Here, the record evidence refutes the City's claims that adding short-term rentals to tourist driven neighborhoods where other short-term rentals already exist is rationally related to a legitimate government interest. Summary judgment is therefore proper.

## STATEMENT OF FACTS

### *Background*

Short-term rentals are nothing new. Americans have been renting out homes on short-term leases for generations. Christina Sandefur, *Turning Homeowners into Outlaws: How Anti-Home Sharing Regulations Chip Away at the Foundation of an American Dream*, 39 U. Haw. L. Rev. 395, 396 (2017). A quick survey through Lexis-Nexis shows numerous examples of week-to-week rentals of houses across the country

going back more than a century. *See e.g.*, *Bradford v. State*, 22 Ala. App. 171, 171 (1927) (discussing contract for weekly rent of a furnished house); *Carnegie v. Perkins*, 191 N.C. 412, 413, (1926) (weekly rental of part of a house); *Raymond v. Strickland*, 124 Ga. 504, 506 (1905) (discussing weekly rental contract for house in Georgia); *Wineman v. Phillips*, 93 Mich. 223, (1892) (weekly rental contract for a house in Detroit); *Horton v. Handvil*, 41 N.J. Eq. 57, 61, (1886) (discussing weekly rental contract).

The same is true in Texas. *See, e.g.*, *Williams v. State*, 47 S.W.2d 298, 299 (Tex. Crim. App. 1932) (discussing weekly rental of houses in Falls County); *Coalson v. Holmes*, 240 S.W. 896, 897 (Tex. 1922) (discussing weekly rental of three-bedroom houses in Ft. Worth in 1912).

Historically, short-term leases have been viewed as an acceptable residential use of property in Texas. *See JBrice Holdings, L.L.C. v. Wilcrest Walk Townhomes Ass'n*, 644 S.W.3d 179, 185 (Tex. 2022); *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 291 (Tex. 2018) (same). As the Texas Supreme Court recently explained, the majority view amongst appellate courts is that the residential nature of a property use turns on what the tenants do on the property, not how long they are there. *See*, *id.* So "long as the renters continue to relax, eat, sleep, bathe, and engage in other incidental activities" on the property, they are using it "for residential purposes." *Tarr*, 556 S.W.3d at 291, n.14 (quoting *Slaby v. Mt. River Estates Residential Ass'n*, 100 So. 3d 569, 579 (Ala. Civ. App. 2012). Indeed, the majority of courts across the country have come to the same conclusion. *See Hawai'i Legal Short-Term Rental All. v. City & Cnty. of Honolulu*, No. 22-cv-247-DKW-RT, 2022 U.S. Dist. LEXIS 187189, at *16–18 (D. Haw. Oct. 13, 2022) (cataloging nineteen cases across the country holding that short-term rentals are a residential use and only five to the contrary).

2

Despite this history, some Texas cities recently began to regulate or prohibit short-term leases. See, e.g., *Zaatari v. City of Austin*, 615 S.W.3d 172 (Tex. App.—Austin, 2019); *Dallas Short-Term Rental Alliance, et. al. v. City of Dallas*, No. DC-23-16845, (95th Dist. Ct., Dallas County, Dec. 6, 2023). For the most part, these cities claimed that short-term rental bans were necessary to preserve neighborhood character or abate alleged nuisance behavior at short-term rentals. See, *id*. But when challenges to these ordinances have been raised, the evidence has not supported these cities' claims.

For example, when property owners challenged the City of Austin's short-term rental ordinance, documents turned over in discovery showed that the City's own studies prior to adopting its ordinance had confirmed that short-term rentals produced *"significantly fewer"* nuisance complaints per-capita than long-term housing, and a tiny number of complaints overall. *Zaatari v. City of Austin*, 615 S.W.3d 172, 189–90 (Tex. App.—Austin, 2019) (emphasis added). Looking at this evidence, the Third Court of Appeals concluded that "nothing in the record supports a conclusion that a ban on [short-term] rentals would resolve or prevent the stated concerns" (*Id*. at 189) and that "the ordinance serve[d] a minimal, if any, public interest while having a significant impact on property owners' substantial interest in a well-recognized property right." *Id*. at 191–92.

When property owners in Dallas challenged its ban on short-term rentals, the City's own study showed that "over 90 percent" of short-term rentals had never had a single nuisance complaint, much less a citation. Ex. 1 (Short-Term Rental Data Analysis – Dallas). As a result, the court concluded that the evidence did not support the city's claim that banning short-term rentals was rationally related to nuisance abatement. *Dallas Short-Term Rental Alliance,* No. DC-23-16845, at *4-5 (Ex. 2)

Various studies across the country have produced similar results. For example, a study of three cities in California concluded that the presence of short-

term rentals does "not result in heightened nuisance issues" in residential neighborhoods and that the presence of short-term rentals "may actually reduce the rate of nuisance complaints." Ex. 3 at P 00208, 00216 (California Short-Term Rental Study). And a similar study in New York found that entry of short-term rentals into a neighborhood was "associated with a reduction in residential noise complaints." Ex. 4 at P 00225 (Empirical Analysis of Home Sharing Platforms and Noise Complaints).

As a result, Texas Courts have almost uniformly held short-term rental bans to be constitutionally suspect. See, e.g., *City of Grapevine*, 651 S.W.3d 317 (Tex. App. —Fort Worth, 2022) (due course of law); *Zaatari*, 615 S.W.3d 172 (retroactivity); *Vill. of Tiki Island v. Ronquille*, 463 S.W.3d 562 (Tex. App.—Galveston, 2015) (takings); *Crystal Cruise Inv. v. City of Dickinson*, No. 22-CV-1659 (Galveston Co. – 405th Dist., Jan. 4, 2024) (Ex. 5) (due course of law); *Browning* v. *Town of Hollywood Park*, No. 23-CV-01485 (W.D. Tex. Dec. 22, 2023) (Ex. 6) (retroactivity); *Dallas Short-Term Rental Alliance,* No. DC-23-16845 (Ex. 2) (due course of law and equal protection).

As explained below, the City of New Braunfels' Ordinance follows this pattern.

### *The History of Short-term Rentals in New Braunfels*

Short-term rentals have been prevalent in New Braunfels neighborhoods for decades, if not longer. Long considered a tourist destination, the City is home to the world famous Schlitterbahn Waterpark, Texas's oldest dancehall, Texas's oldest bakery, nearby Natural Bridge Caverns, the Texas Ski Ranch, and a 10-day annual sausage festival known as Wurstfest. City of New Braunfels, Living & Visiting, https://www.newbraunfels.gov/2993/Living-Visiting.

Given these attractions, a quick google search unsurprisingly shows advertisements for short-term rentals in New Braunfels neighborhoods as early as the 1960s. Ex. 7 (New Braunfels Newspaper Classifieds). As of December of 2023, AirBnB listed over 700 short-term rentals in New Braunfels. Ex. 8, Looney Dep. 27:21–25, Ex. 3 (AirBnB Website).

***The City Bans New Short-term Rentals***

Eventually, however, certain interest groups within the city pushed for a change.  The City conducted several "workshops" where these groups suggested ways the City could dictate lease terms for private property owners.  The City admits these groups produced no data showing that renting one's home out for less than thirty-days causes more problems than other residential uses in New Braunfels.  Ex. 8, Looney Dep. 168:22–169:8.  To the contrary, the City could not produce a single nuisance citation against a short-term rental in the five years preceding the ordinance.  *Id*. at 70:25–71:21, Ex. 9 p. 18 (Response to RFP No. 19), Ex. 9 p. 29 (Response to Interrogatory No. 12).

Nevertheless, the City adopted Ordinance. No. 2011-37 prohibiting all short-term rentals in residential areas.  (Currently codified at New Braunfels Code of Ord. §144–5.17 et. seq.) ("the Ordinance").  In a bit of political bargaining, the Ordinance grandfathered certain pre-existing short-term rentals in residential areas— effectively creating a short-term rental monopoly for a select group of homeowners.  ECF 9–1 at §5.16(c)(4).

***Plaintiffs' Injuries***

The Property Owners in this case are not part of the lucky few allowed by the city to exercise their full leasing rights.

Rafael Marfil was born in New Braunfels, but he lives and works elsewhere in Texas.  Ex. 10, R. Marfil Dep. 49:15–24.  He purchased the house at issue in this case because he wants to own property in the city and remain connected to the community.  *Id*.  Making the property available for short-term renting allows Rafael to afford the house, maintain flexibility in being able to use the house when he wants, and also offer others an opportunity to visit his hometown.  *Id*.  The house lies directly across from the entrance to Schlitterbahn, one of the largest waterparks in the country, and is surrounded by other high traffic uses including a diner, hair-cut studio, day spa,

and bakery.  Ex. 8, Looney Dep. 216:21–219:25, Ex. 17.  There are at least four other short-term rentals within a few hundred feet of the home.  *Id*. at 221:15–16.

In 2019, Rafael petitioned to have the property re-zoned so that he could lawfully rent the property out short-term.  *Id*. at Ex. 16 p. 1.  The City admits that using the property as a short-term rental would not "undermine a sense of community."  *Id*. at 225: 10–15.  Neither would it produce other factors that would "substantially affect the public health, safety, morals, or general welfare."  *Id*. at Ex. 16 p. 2.  Nevertheless, after neighboring property owners objected, the City denied Rafael's application to rezone his property for use as a short-term rental.  Ex. 11 at D 034713 (City Council Minutes Feb. 25, 2019).

Rafael's brother and sister-in-law, Enrico and Naomi Marfil, have similar desires.  Ex. 12, E. Marfil Dep. 40:25–41:20.  Ex. 13, N. Marfil Dep. 24:4–8.  Making their property available for short-term renting allows them to remain a part of New Braunfels without leaving the house vacant when they are not using it.  *Id*.  Like Rafael, Enrico and Naomi's house is also right across the street from Schlitterbahn, and is also surrounded by other high traffic uses including a diner, hair-cut studio, day spa, and bakery.  Ex. 8, Looney Dep. 216:21–219:25, Ex. 17.  There are at least four other short-term rentals within a few hundred feet of the home.  *Id*. at 221:15–16.

In 2019, Enrico and Naomi petitioned to have the property re-zoned so that they could lawfully rent the property out short-term.  *Id*. at Ex. 16 p. 1.  The City admits that using the property as a short-term rental would not "undermine a sense of community," or produce other factors that would "substantially affect the public health, safety, morals, or general welfare."  *Id*. at 225: 10-15, Ex. 16, p. 2.  Nevertheless, after neighboring property owners objected, the City denied the Marfils' application to rezone the property for use as a short-term rental.  Ex. 11 at D 034713 (City Council Minutes Feb. 25, 2019).

Korey Rohlack owns property at 1265 E. Common Street. Ex. 14, Rohlack Dep. 13:18–19. When he bought the property in 2017, it was an unimproved lot. *Id.* Korey is an airline pilot. *Id.* at 39:25–40:1. He wants to build a home that he can rent out while he is away for work and use when he returns. *Id.* Korey's lot is in a high traffic area surrounded by businesses. Ex. 8, Looney Dep. 206:7–8. Within a block of the home is a strip center, an Exxon gas station, a sports bar, and the freeway. *Id.* at 204:7–206:4. Given Korey's work, he applied to have the property rezoned for short-term rental use so that he could build a house and rent it when he is away. Ex. 14, Rohlack Dep. 39:20–40:6. City staff concluded that the request was "compatible with neighboring residential development" and that there should be no other factors that would "substantially affect the public health, safety, morals, or general welfare." Ex. 8, Looney Dep. 210:23–211:8, Ex. 15, p. 2. Nevertheless, after some neighboring property owners objected to the proposal, the City permanently tabled the application. Ex. 15, at D 034268 (City Council Minutes, Jan. 14, 2019). Because of the City's ban on short-term rentals, Korey's lot is still undeveloped. Ex. 14, Rohlack Dep. 13:18–19.

Daniel Olveda owns a house at 1267 Common Street. Ex. 16, Olveda Dep. 4:17. He originally purchased his house to be his primary residence. *Id.* 9:13–14. After living in the house for several years Daniel got engaged and moved to another house with his fiancé in 2019. *Id.* 14:19–25. However, Daniel would like to keep his house in New Braunfels so that he can continue to visit the city with friends and family, and eventually pass the house on to his daughter. *Id.* at 29:1–4. In order to do so, he would like to rent the house out on short-term leases. *Id.* at 32:17–22. Long-term leasing typically does not cover his expenses on the property. *Id.* at 27:19–21. Daniel has also struggled with keeping his long-term tenants at the property. *Id.* at 21:11–22:7.

On the advice of City officials Daniel applied for rezoning to allow him to lease the house on a short-term basis.  *Id.*  City staff concluded that the request was "compatible with neighboring residential development" and that there should be no other factors that would "substantially affect the public health, safety, morals, or general welfare."  Ex. 8, Looney Dep. 210:23–211:8, Ex. 15 p. 2.  Nevertheless, after some neighboring property owners objected to the proposal, the City permanently tabled the application.  Ex. 15, at D 034268 (City Council Minutes, Jan. 14, 2019).

Douglas Wayne Mathes also owns property that he would like to lease out on a short-term basis.  Ex. 17, Mathes Dep. 20:21–23.  Douglas bought the house in 2011 for his family's use and to rent out short-term.  *Id.*  The house is approximately fifty feet from the entrance to Schlitterbahn and next-door to a grandfathered short-term rental that shares a yard with his house.  Ex. 8, Looney Dep. 229:13–230:9, 233:8–10. In the summer, the line for the Master Blaster tube slide overlooks his house.  Ex. 17, Mathes Dep. 111:14–112:1.   Douglass has had significant trouble with maintaining long term renters.  *Id.* 35:15–36:1.  Nevertheless, with New Braunfels' ban on short-term rentals in his area, Douglas is unable to rent his property for less than 30 days.  *Id.* 21:25–22:3.

### Prior Proceedings in this Court

The Property Owners filed suit alleging that the City's ban on short-term rentals unreasonably denied them the use of their property in violation of the Due Process Clause of the Fourteenth Amendment, the Due Course of Law provision of the Texas Constitution (Article 1, Section 19) as well as the Equal Protection clauses of the United States and Texas Constitutions.  ECF No. 1 (complaint); ECF No. 39. (amended complaint).

In particular, the Property Owners argued that short-term rentals are a well-established and judicially recognized residential use in Texas, and evidence shows that short term rentals do not produce more disturbances than other residential uses.

ECF No. 39 ¶ 63–107. As such, the Property Owners argued that the City's decision to prohibit short-term rentals from all residential areas—including areas adjacent to commercial uses—was unreasonable and not supported by the police power. *Id.*

The City filed a motion to dismiss under Fed. R. Civ. Proc. 12(b)(6). ECF No. 9. The City did not dispute that short-term rentals have been held to be consistent with residential use by the Texas Supreme Court. *Id.* at 6–7. Nor did the City dispute that it had *no evidence* that short-term rentals are incompatible with residential use. Instead, the City argued that the Property Owners' claims should be dismissed because, under rational basis scrutiny, zoning decisions are allegedly not subject to *any* factual rebuttal. *Id.* at 14. The City argued further that it is sufficient under rational basis scrutiny that *some* members of the New Braunfels community "vigorously oppose" short-term rentals and that the City believes banning short-term rentals will preserve the residential character of neighborhoods. *Id.* at 9. To allow any sort of factual inquiry in this case, the City argued, "would improperly subject this 'run-of-the-mill zoning dispute' to an additional administrative appellate review process." *Id.*

### *This Court's Original Decision*

This Court originally granted the motion to dismiss. The Court concluded that evidence of any correlation between nuisances was not relevant, because it was undisputed that (1) some portion of the New Braunfels community opposed new short-term rentals in neighborhoods, (2) the City claimed that it believed short-term rentals were correlated with nuisance behaviors, and (3) the City claimed short term rentals were incompatible with residential use. ECF No. 20, p. 13–14 (Magistrate Judge's Report and Recommendation adopted by the Court at ECF No. 29). Therefore, the Court concluded that the Property Owners failed to state a claim and dismissed the case. *Id.*

***Appeal to the Fifth Circuit***

The Property Owner's appealed to the Fifth Circuit. The Property Owners argued that neighborhood opposition, standing alone, was not a sufficient basis for a zoning ordinance. Appellants' Brief at 40–41, *Marfil v. City of New Braunfels*, 70 F.4th 893 (5th Cir. 2023) available at http://tinyurl.com/4w6bk3an. Nor was it sufficient for the City to claim, *ipse dixit*, that short-term rentals cause nuisances or are incompatible with residential areas. *Id*. at 44–47. Rather, under both Texas and Fifth Circuit precedent, the evidence of correlation between short-term rentals and nuisance behavior mattered. *Id*. The Property Owners therefore argued that the dismissal of Plaintiffs' claims without discovery was improper. *Id*. 55–56.

The City responded that evidence of nuisance was not relevant because it was undisputed that (1) some members of the New Braunfels community opposed short-term rentals, and (2) that short-term rentals affect neighborhood character, by definition, because a short-term tenant by definition will be less "intertwined" in the community than someone who lives in a neighborhood for 20 years. Appellee's Brief at 45, *Marfil v. City of New Braunfels*, 70 F.4th 893 (5th Cir. 2023)

The Court agreed with the Property Owners that evidence of nuisance correlation mattered. *Marfil*, 70 F.4th at 893. Just two weeks after oral argument, the Fifth Circuit vacated this Court's judgment in a one paragraph published opinion. *Id*. The Court concluded that "based on the complaint's well-pled allegations, Plaintiffs are entitled to engage in discovery in an attempt to surmount the currently high bar for challenging local zoning ordinances under the Constitution." *Id*. The Fifth Circuit then remanded for discovery. *Id*.

***Posture After Remand***

On remand to this Court, the Property Owners promptly served discovery. Among other things, the Property Owners asked for: (1) any documents which support the governmental interest the City claims justifies its short-term rental prohibition (RFP No. 19) (2) any citations or notices of violation for nuisance activities at short term rentals for the five years preceding the adoption of the ordinance (Interrogatory No. 12), and (3) asked that the City admit that it had never revoked a short-term rental permit for nuisances. (RFA No. 4). Ex. 18, p. 3, 12, 13 (Property Owners' requests).

The City claims that it "fully responded" to these requests. ECF No. 43 at p. 2 n. 1; *see also*, Ex. 8, Looney Dep. 94:6–95:2. In its responses the City did not produce a single citation, notice of violation, or formal nuisance complaint against a short-term rental. Ex. 10, p. 18, 20 (Responses to RFP No. 19, 26), Ex. 10, p. 29 (Response to Interrogatory No. 12). And the City admitted that it had never "revoked a short-term rental permit." Ex. 10, p. 5 (response to RFA No. 4).

The Property Owners' then requested that the City designate a representative to testify as to the "evidence the City relies on to support the government interest(s) behind its ordinances regulating short term rentals." Ex. 8, Looney Dep. at Ex. 19. (topic 4). The City's witness agreed that the City kept records of any nuisance citations against short-term rentals, and that such evidence "would be pretty easy to dig up." *Id*. at 70:25–72:25. But he admitted that he could not name a single short-term rental with a nuisance citation and that the City had no data or evidence showing that short-term rentals cause more nuisance behaviors than other residential properties. *Id*.; see also *id*. at 69:12-20; 167:6-21.

After deposition, the Property Owners once again asked the City to produce any citations or notices of violations for activities as permitted short-term rentals— this time, over the last five years. Ex. 19, p. 6 (Second RFP No. 2). The Property

Owners also asked for any notices the City had ever sent to even initiate proceeding to revoke a short-term rental permit. *Id*. at p. 6 (Second RFP No. 3).

The City has not produced a single citation or notice of violation for nuisance activities at a permitted short-term rental. Ex. 20, p. 5 (D's Response to Ps Second RFP No. 2). The City also admits that it has never even initiated proceedings to remove a short-term rental permit on the basis of nuisance activity. *Id*. at 5 (D's Response to Ps Second RFP No. 3).

Given the City's inability to produce any meaningful evidence to support its claimed government interest, the Property Owners now move for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (citation omitted). That burden can be satisfied by demonstrating that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper. *Duckett v. Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992) (citation omitted). To do so, the party opposing the summary judgment motion must identify specific evidence in the record and state the precise manner in which that evidence supports the party's claim. *Esquivel v. McCarthy*, No. 3:15-CV-1326-L, 2016 U.S. Dist. LEXIS 144260, at *2 (N.D. Tex. Oct. 18, 2016) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988)). "Rule 56 does not impose upon the district court a duty to 'sift through the record in search of evidence' to support [the nonmovant's] opposition to summary judgment." *Id*. (citing *Ragas*, 136 F.3d at

12

458; *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).  If the non-movant fails to meet this burden, summary judgment is proper.

## ARGUMENT

## I.    THE ORDINANCE ARBITRARILY DENIES PLAINTIFFS' PROPERTY RIGHTS IN VIOLATION OF ARTICLE 1, SECTION 19 OF THE TEXAS CONSTITUTION

The easiest way to resolve this case is the Texas Constitutional claims.  Indeed, virtually every court to review a municipal short-term rental ban under the Texas Constitution has found such bans to be constitutionally suspect.  See, e.g., *City of Grapevine*, 651 S.W.3d 317 (due course of law); *Zaatari*, 615 S.W.3d 172 (retroactivity); *Vill. of Tiki Island*, 463 S.W.3d 562 (takings); *Crystal Cruise Inv. v. City of Dickinson*, No. 22-CV-1659 (Galveston Co. – 405th Dist., Jan. 4, 2024) (Ex. 5) (due course of law); *Browning v. Town of Hollywood Park*, No. 23-CV-01485 (W.D. Tex. Dec. 22, 2023) (Ex. 6) (retroactivity); *Dallas Short-Term Rental Alliance, et. al. v. City of Dallas*, No. DC-23-16845, (95th Dist. Ct., Dallas County, Dec. 6, 2023) (Ex. 2) (due course of law and equal protection); but see *Draper v. City of Arlington*, 629 S.W.3d 777 (Tex. App.—Fort Worth, 2021) (denying preliminary injunction).

This makes sense.  In Texas, "[t]he right to acquire and own property, and to deal with it and use it as the owner chooses, so long as the use harms nobody, is a natural right."  *Zaatari*, 615 S.W.3d at 200 (quoting *Spann v. City of Dallas*, 235 S.W. 513, 515 (Tex. 1921)).  Texas courts have repeatedly held that this right includes the right to lease one's home to others on a short-term basis.  *Id.* at 190–91; *City of Grapevine*, 651 S.W.3d at 346–47; *Vill. of Tiki Island*, 463 S.W.3d at 578.  The Texas Attorney General has likewise confirmed this view.  Tex. Att'y Gen. Op. No. KP-0308 (2020) at *2, https://tinyurl.com/yzw55jmb (holding that the right to lease short-term is a constitutionally protected property right).

13

To be sure, the right to lease is not absolute. Some restriction is permissible. However, at a minimum, restrictions on property rights must be rationally related to a legitimate government interest and not unduly burdensome given the government interest at stake. *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 87 (Tex. 2015).

Like the federal rational basis test, this analysis must be based on the record. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 932–33 (Tex. 1998); *Patel*, 469 S.W.3d at 87 (the court must "consider the entire record, including evidence offered by the parties."). But Texas law differs from the federal rational basis test in two important ways.

First, in Texas, the local police power over private property is largely limited to policing nuisances and other harmful uses. *Milton v. United States*, 36 F.4th 1154, 1161 (Fed. Cir. 2022) (citing *Severance v. Patterson*, 370 S.W.3d 705 (Tex. 2012); *City of Dallas v. Stewart*, 361 S.W.3d 562, 569 (Tex. 2012); *Lombardo*, 73 S.W.2d 475) (distinguishing federal law from Texas law). Under this approach, zoning regulations must be based on harm. See *Lombardo*, 73 S.W.2d at 479.

Second, unlike federal rational basis, Article 1 section 19 requires at least some consideration of proportionality as well as rationality. *Patel*, 469 S.W.3d at 90. If the "loss to the property owner affected, in proportion to the good accomplished [by the ordinance]" is unreasonable, then the ordinance must fail. *W. U. Place v. Ellis*, 134 S.W.2d 1038, 1040 (Tex. 1940); *Id.* at 1041 ("the seriousness of the restriction upon the private right is to be considered in balance with the expediency of the public interest.").

The City's Ordinance cannot pass this test. As explained below, the record shows that the Ordinance is not rationally related to a legitimate government interest. Moreover, even if some minor correlation to a legitimate interest could be

14

shown, the City's total prohibition on short-term renting is unduly burdensome given the government interest at stake.

### A. Prohibiting short-term rentals is not rationally related to nuisance abatement.

The City claims that banning short-term rentals in residential areas is rationally related to reducing nuisance activities like noise and trash. Ex. 9, p. 24 (Resp. to Inter. No. 1). But it is black-letter law that that a city may not declare a traditional residential use of property to be a nuisance when it is not so in fact. *Houston v. Lurie*, 148 Tex. 391, 224 S.W.2d 871, 874 (1949) ("even the State may not denounce that as a nuisance which is not in fact."); *Yates v. Milwaukee*, 77 U.S. (10 Wall.) 497, 505 (1870) (same). Even under rational basis scrutiny, evidence matters. *Marfil*, 70 F.4th at 893.

Here, the evidence shows that there is no correlation between short-term rentals and nuisance behaviors like noise and trash. To the contrary, over a ten-year period, the City could not produce *a single citation* or notice of violation for such activities at permitted short-term rentals. Ex. 9, p. 18, 20 (Responses to RFP No. 19, 26) (no citations for five years before adopting ordinance), Ex. 9, p. 29 (Response to Interrogatory No. 12), Ex. 19, at 6 (Second RFP No. 2) (no citations in the last five years). Moreover, despite the fact that the City may, and in some cases must, initiate proceedings to remove a short-term rental permit under its ordinance if there are repeated nuisances on the property, the City concedes that it has "never" initiated such proceedings. New Braunfels Code of Ord. §144-5.17-7; §144-5.17-8, Ex. 9, p. 5 (response to RFA No. 4), Ex. 19, at p. 5 (response to second RFP No. 3). Instead, the City's own official claimed that short term rental owners "want to be as friendly and workable as possible to continue to not be objectionable to others within the neighborhoods." Ex. 8, Looney Dep. at 89:16–24.

This is not surprising.  Every Texas court to look at the evidence has found that short-term rentals are not correlated with nuisance behaviors.  See, e.g., *Zaatari*, 615 S.W.3d 172 at 189–90 ("The record shows that short-term rentals do not receive a disproportionate number of complaints from neighbors."); *City of Dickinson*, No. 22-CV-1659 at *3  (Ex. 5) (The evidence did not show that long term leases "would not cause the same complaints" as short term leases.); *Town of Hollywood Park*,  No. 23-CV-01485 at *4 (Ex. 6) ("There are no legislative factual findings in the record to support the conclusion that a ban on short-term rentals would resolve [nuisance] concerns."); *Dallas Short-Term Rental Alliance*, No. DC-23-16845 *5–6 (Ex. 2) ("There is not sufficient evidence that STRs cause excessive traffic, noise, density, or other nuisances that the City claims justify the STR Ordinances.").

Indeed, in Austin, the City's own study showed that short-term rentals produced "significantly fewer" such complaints than "other single-family properties." *Zaatari*, 615 S.W.3d at 189.  In Dallas, the evidence showed that "over 90 percent" of short-term rentals had never had a single complaint, much less a citation.  Ex. 1 (Short-Term Rental Data Analysis – Dallas).  Studies around the country have come to similar conclusions.  See, e.g., Ex. 3, at P 00208 at 00216 (California Short-Term Rental Study) (noting that the presence of short-term rentals does "not result in heightened nuisance issues" in residential neighborhoods and that the presence of short-term rentals "may actually reduce the rate of nuisance complaints.");  Ex. 4, at P 00225 (Empirical Analysis of Home Sharing Platforms and Noise Complaints) (noting that the entry of short-term rentals into a neighborhood was "associated with a reduction in residential noise complaints.").  The City admits that it has no evidence that the numbers are different in New Braunfels.  Ex. 8, Looney Dep. 91:25–92:22.

In the face of this data, the City points to statements from various city meetings where some citizens expressed concerns that short-term rentals *could* cause nuisance behaviors.  Ex. 8, Looney Dep. 95:18–24.  But the same was true in every

other short-term rental case mentioned above where the court held that there was no connection between short-term rentals and nuisances. These uncorroborated fears were not sufficient to overcome the actual evidence. Rational basis scrutiny may be lenient, but it does not require the court to accept irrational fears or falsehoods. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985) ("mere negative attitudes, or fear, unsubstantiated by factors which are properly cognizable in a zoning proceeding, are not permissible bases"); *Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 469 (5th Cir. 2021) (a rationale cannot stand if it is "betrayed by the undisputed facts."); *Catherine H. Barber Mem'l Shelter, Inc. v. Town of N. Wilkesboro Bd. of Adjustment of N. Wilkesboro*, 576 F. Supp. 3d 318, 340-41 (W.D.N.C. 2021) ("unsubstantiated fears" are not sufficient for zoning).

Here, the uncontested facts refute any connection between banning short-term rentals and nuisance abatement. Summary judgment on this issue is therefore proper.

**B.    Even if there were some marginal connection between banning short-term rentals and a legitimate government interest, banning short-term rentals under these circumstances is unduly burdensome given any marginal government interest at stake.**

Even if there was some correlation between short-term rentals and nuisances—and there is not—that marginal connection still could not justify the City's Ordinance. As noted *supra*, the Texas Constitution requires that restrictions on property rights be at least somewhat proportional to the government interest at stake. *W. U. Place*, 134 S.W.2d at 1040, 1041. Here, the City did not merely regulate short-term renting, it fully prohibits it in residential areas. Whatever connection there may be between short-term renting and nuisance abatement—and the record shows no such connection—a flat ban on short-term renting is grossly disproportional to that interest.

This is particularly true as applied to the properties at issue in this case. As explained above, most of the properties at issue are directly adjacent to Schlitterbahn and numerous other short-term rentals. Ex. 8, (Looney Dep. 216:21–219:25, Ex. 17). All of the properties at issue are in high traffic areas surrounded by commercial uses where the City concedes the use would neither "undermine a sense of community" nor "substantially affect the public health, safety, morals, or general welfare." Ex. 8, Looney Dep. 210:23–211:8, Ex. 15 p. 2; Ex. 8, Looney Dep. 225: 10-15, Ex. 16 p. 2. To prevent the Property Owners from exercising their traditional right to lease in such circumstances is wholly disproportionate to any government interest at stake. Summary judgment on this issue is therefore proper.

## II. THE ORDINANCE ARBITRARILY DENIES PLAINTIFFS' PROPERTY RIGHTS IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Because the Ordinance violates the Texas Constitution, that could be the end of this case. But, to the extent the Court wants to go further, the Ordinance also violates the Fourteenth Amendment.

Like the Texas Constitution, the Fourteenth Amendment requires that restrictions on private property rights be "rationally related to a legitimate governmental interest." *Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2006). And like the Texas Constitution, federal courts must engage in this analysis based on the record evidence. *Marfil*, 70 F.4th at 893.

However, Federal law takes a somewhat broader view of the police power over private property rights than Texas law. In *Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926), the Supreme Court rejected a nuisance-only approach to zoning. Under *Euclid*, cities may regulate based on broader concepts like "residential character." See *id*.

But the Court has been careful to note that broader does not mean "unlimited." *Wash. ex. rel. Seattle Title Tr. Co. v. Roberge*, 278 U.S. 116, 121 (1928). The "maxim *sic utere tuo ut alienum non laedas*, [i.e. use your own property in such a way that you do not injure other people's] which lies at the foundation of so much of the common law of nuisances" remains a "helpful clew" for determining the scope of the zoning power. *Euclid*, 272 U.S. at 387-88. As a result, preserving "residential character" has been used as shorthand for things like "excluding from residential areas the confusion and danger of fire, contagion and disorder which in greater or less degree attach to the location of stores, shops and factories." *Euclid*, 272 U.S. at 391. A City may not prohibit a traditional property use merely because a majority of its citizens say so. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985).

Instead, the evidence in the record must show: (1) that the end sought to be achieved by the prohibition is a legitimate basis for a zoning ordinance, and (2) that the prohibition is rationally related to furthering that interest. *Mikeska*, 451 F.3d at 380.

Here, the City claims that banning short-term rentals is rationally related to five categories of government interests. Ex. 9, p. 24 (Resp. to Inter. No. 1.) But as explained below, most of these interests are not legitimate bases for a zoning ordinance, and even if they were, the evidence flatly refutes any connection between those interests and banning short-term rentals. Summary judgment is therefore proper.

**A.    The Ordinance is not rationally related to nuisance abatement.**

As noted above, the City argues that banning short-term rentals is rationally related to nuisance abatement. Ex. 9, p. 24 (Resp. to Inter. No. 1) But while nuisance abatement is legitimate government interest, the record in this case—and *every other Texas case* to consider the evidence—flatly refutes any meaningful connection between short-term rentals and an increase in nuisance behaviors. See, e.g., *Zaatari*,

615 S.W.3d 172 at 189–90; *City of Dickinson*, No. 22-CV-1659 at *3 (Ex. 5); *Town of Hollywood Park*, No. 23-CV-01485 at *4 (Ex. 6); *Dallas Short-Term Rental Alliance*, *5–6 (Ex. 3). Nuisance abatement therefore cannot be a rational basis for the Ordinance.

### B. The Ordinance is not rationally related to preserving "residential character."

The City next claims that banning short-term rentals from residential areas is rationally related to preserving residential character. Ex. 9, p. 24 (Resp. to Inter. No. 1).[1] But, while residential character can be a basis for a zoning ordinance, Texas law is clear that short-term rental bans do not advance this sort of "zoning interest because both short-term rentals and owner-occupied homes are residential in nature." *Zaatari*, 615 S.W.3d at 190 (citing *Tarr v. Timberwood Park Owners Ass'n, Inc.*, 556 S.W.3d 274, 291 (Tex. 2018)). Indeed, the City itself admits that short-term rentals are a "residential use." Ex. 8, Looney Dep. 58:5–12; Ex. 6 at p. 41.

This makes sense. "Residential character" is not some magic talisman that can be waived around to justify any zoning restriction the City desires. Rather, the

---

[1] Technically, the City raises nine separate interests that fit this category Ex. 9, p. 24 (Resp. to Inter. No. 1). The City claims that the Ordinance is rationally related to preserving a "sense of community, character of the zoning districts, preservation of residential neighborhoods, the sustenance and protection of the character of single-family and two-family residential districts, the well-established distinction between long-term residence in a home versus transient use of a house, increased community investment and betterment among long-term residents, . . . , the erosion of sense of community from short-term rentals, the unlikelihood of community participation and neighborhood betterment by short-term renters, a shared commitment to the common good of a community held by long-term residents." But when asked at deposition, the City's designated witness often struggled to articulate how these interests were different than "residential character." See, e.g. Ex. 8, Looney Dep. 131:16–139:2; 164:7–170:1. At other times, the witness admitted that the interests were the same. *Id.* at 139:3–140:7; 152:8–153:22. Because neither Fifth Circuit precedent, nor the Texas Zoning Enabling Act speaks of these vague non-quantifiable interest, and the City could not quantify or explain them at deposition, the Property Owners read them in their ordinary sense—as multiple different ways of saying "residential character."

Supreme Court has used that term as short-hand for "excluding from residential areas the confusion and danger of fire, contagion and disorder which in greater or less degree attach to the location of stores, shops and factories." *Euclid*, 272 U.S. at 391.

Short-term rental bans do not fit that mold. A short-term renter is not using the home as a store or factory. As the Texas Supreme Court recognized, short-term rental tenants use homes the same way that long-term tenants do: "to relax, eat, sleep, bathe, and engage in other incidental activities." *Tarr*, 556 S.W.3d 274, at 291, n.14 (quoting *Slaby v. Mt. River Estates Residential Ass'n*, 100 So. 3d 569, 579 (Ala. Civ. App. 2012). This is, by definition, residential activity. *Id*. Indeed, the overwhelming majority of courts around the country have rejected arguments that short-term renting is incompatible with residential use. *See Hawai'i Legal Short-Term Rental All. v. City & Cnty. of Honolulu*, No. 22-cv-247-DKW-RT, 2022 U.S. Dist. LEXIS 187189, *16–18 (D. Haw. Oct. 13, 2022) (cataloging nineteen cases across the country holding that short-term rentals are a residential use and only five to the contrary). The City's appeal to residential character therefore fails as a matter of law.

Indeed, appeals to "residential character" are particularly arbitrary when applied to the facts in this case. New Braunfels did not adopt modern zoning until the late twentieth century. Prior to 1987, its zoning categories were cumulative— i.e., more intense zoning categories included less intense categories. Ex. 8, Looney Dep. 10:25–11:4. For example, the zoning code presumptively allowed residential units to be built in commercial areas. *Id*. at 10:20–24. As a result, it is not unusual for New Braunfels homes to be close to commercial uses and tourist destinations. *Id*. at 13:3–14.

The Property Owners' houses reflect this reality. Most of the houses in this case are directly across the street from Schlitterbahn and are surrounded by

commercial uses and other short-term rentals.  Ex. 8, Looney Dep. 216:21–219:25, Ex. 17.  Indeed, the City itself admits that an additional short-term rental in the area would not "substantially affect the public health, safety, morals, or general welfare." Ex. 8, Looney Dep. 210:23–211:8, Ex. 15 p. 2; Ex. 8, Looney Dep. 225:10–15, Ex. 16 p. 2.

As Judge Jones rightly noted at oral argument in this case, any claim that that there is a "rational basis for preserving the character, the single-family character…" of the Property Owners' neighborhoods seems irrational "as a million visitors go into Schlitterbahn every year." *Marfil v. New Braunfels*, Oral arg. at 16:36-56 available at, http://tinyurl.com/mrx5tb7f; See also *id* at 20:58-21:48 (noting with regard to "residential character" that "if these guys are across the street from you know some kind of retail or cafe or something, or if they're 50 feet from Schlitterbahn, or they are next door to a short-term rental, what makes your idea rational?")

The Supreme Court's decision in *Nectow v. Cambridge*, 277 U.S. 183, 186 (1928) is instructive.  In that case, a property owner challenged the rationality of city's refusal to allow commercial development on his residentially zoned lot.  *Id*. While the lot was zoned residential and abutted on two sides by residential dwellings, it was also directly adjacent to the Ford Motor Company auto assembling factory, and the tracks of the Boston & Albany Railroad were nearby.  *Id*.  The Court concluded that the city's appeal to residential zoning in such a context was irrational.  *Id*. at 448.

So too here. The Property Owner's houses are surrounded by uses that are no less disruptive than the property uses at issue in *Nectow*.  Indeed, the City's own staff concluded that rezoning the properties commercial would neither "undermine a sense of community" nor "substantially affect the public health, safety, morals, or general welfare."  Ex. 8, Looney Dep. 210:23–211:8, Ex. 15 p. 2; Ex. 8, Looney Dep. 225: 10-15, Ex. 16 p. 2.  For the City to now argue that preventing Property Owners from

engaging in short-term renting—a well-established *residential* use—is necessary to preserve the *residential* character of that area is pure nonsense.  Summary judgment is appropriate.

### C.    The Ordinance is not rationally related to housing affordability.

Faced with the failure of its originally claimed interests, the City next argues for the first time on remand that the Ordinance is rationally related to a "reduction in affordable housing stock for potential long-term home-owning residents" caused by short-term rentals.  Ex. 9, p. 24 (Resp. to Inter. No. 1).  But while governments certainly have authority to do *some* things to promote affordability—for example, reducing housing regulations, or providing subsidies—it is unclear whether affordable housing stock is a legitimate basis to restrict property rights through zoning.  See Ex. 8, Looney Dep. 178: 6-25, 179:1 (admitting that "affordability" is not a legitimate basis for zoning under the Zoning Enabling Act); *City of Dickinson*, No. 22-CV-1659 at *4 (holding that a municipal short-term rental ban likely exceeded the zoning authority); *Dallas Short-Term Rental Alliance,* No. DC-23-16845, at *7 (Ex. 2) (same).

More importantly, even if affordability were a legitimate reason to restrict property rights, the City admits that it has no evidence that short-term rentals actually affect housing prices.  Ex. 8, Looney Dep. 180: 23-25, 181:1.  To the contrary, every Texas court to look at the issue has found that there is no connection between housing costs and short-term rentals one way or the other.  *Zaatari*, 615 S.W.3d at 189 (noting that there was "nothing in the record" to support the City's contention that short-term rentals "affect housing affordability."); *Dallas Short-Term Rental Alliance*, No. DC-23-16845, *5 (holding that "STR Ordinances are not rationally related to increasing affordability of housing in Dallas.")  Indeed, the City itself once argued that short-term rentals would *lower* property values, and only recently

changed its mind to argue that short term rentals raise prices.  Ex. 8, Looney Dep. 182:7–10, 184:17–186:25, Ex. 13 (2006 Ordinance).

The City objects that even if the uncontested evidence rebuts any meaningful connection between short-term rentals and housing costs, a ban is still rationally related to affordability, because short-term rentals raise costs *by definition*.  Ex. 8, Looney Dep. 181:2–10.  According to the City, any use of property that takes a home off the market for purchase as permanent home necessarily reduces supply and therefore increases the cost of housing.  *Id*.

But this view of "affordability" would allow the city to ban any number of traditional residential uses without judicial oversight.  As the City admits, both long-term rentals and second homes make homes unavailable for purchase as a long-term residence and therefore, in a purely theoretical sense, drive up housing costs.  *Id*. 181:2–20.  Thus, under the City's theory it could ban all second homes and all long-term rentals.  *Id*.  But cities cannot eliminate well-established property rights solely to financially benefit a politically favored class.  *St. Joseph Abbey v. Castille*, 712 F.3d 215, 222-23 (5th Cir. 2013) (pure economic favoritism is not a legitimate government interest).  Summary judgment on this issue is proper.

### D.    The Ordinance is not rationally related to school enrollment.

The City also argues for the first time on remand that the ordinance is rationally related to addressing "declining school enrollment."  But, again, the City provides no authority that this is a proper basis for zoning.  Local Govt. Code 211.004 (Zoning Enabling Act Purposes).

Moreover, even if increasing school enrollment were a legitimate reason to restrict property rights, the City admits that it has no evidence that short-term rentals actually affect enrollment.  Ex. 8, Looney Dep. 170:6–15.  To the contrary, the City admits that the Ordinance itself does not turn on whether short-term rental owners enroll their children in New Braunfels schools and therefore may have no

effect on enrollment at all. *Id.* at 171:1–14. Moreover, the City concedes that it is not suffering declining school enrollment, despite the prevalence of short-term rentals. *Id.* at 170:6–8.

The City nevertheless claims that short-term rentals might be related to declining school enrollment, because short-term rental owners might be less likely to live in the home and therefore less likely to enroll their children in New Braunfels schools. *Id.* at 171:21–172:7; 173:5–12. But this approach necessarily leads to a dangerous and unlimited view of the zoning power. As the City concedes, elderly couples, second homeowners, and various other individuals are technically less likely to have school-aged children enrolled in public schools. See *id.* at 173: 5–18; 176:12–177:15. Under the City's view, "declining school enrollment" would therefore provide a rational basis for zoning ordinances excluding those groups from certain areas of the City. *Id.* The City provides no authority for this unprecedented expansion of the zoning power. Summary judgment on this issue is proper.

### E.    Community opposition alone is not a legitimate basis to ban a traditional residential use of property from residential areas.

Finally, the City arrives at its original (and likely true) reason for its ordinance—community opposition. Ex. 9, p. 24 (Resp. to Inter. No. 1). According to the City, a segment of the New Braunfels community opposes new short-term rentals in their neighborhoods, and this opposition *alone* is sufficient to justify the ordinance. Ex. 8, Looney Dep. 148:9–22.

But the City raised this argument at the Fifth Circuit, and it was rightly rejected. It is black-letter law that "objections [by] some fraction of the body politic" are not a sufficient basis to prohibit a well-established use of private property. See *City of Cleburne*, 473 U.S. at 448; *Aladdin's Castle, Inc. v. Mesquite*, 630 F.2d 1029, 1040 (5th Cir. 1980) undisturbed on remand from Supreme Court, 455 U.S. 283 (1982)), 713 F.2d 137, 139 (5th Cir. 1983) ("mere disapproval is not enough

constitutionally to justify bringing the full weight of the municipality's regulatory apparatus into play."). If it were, otherwise, every zoning ordinance would be *per se* constitutional, because every zoning ordinance has support from at least some portion of the community. Ex. 8, Looney Dep. 147:5–25. Indeed, the City concedes that under its "community opposition alone" approach, it could ban red houses, two-bedroom houses, single adults, or anything else that the city was opposed to. Ex. 8, Looney Dep. 149:1–150:7. This unlimited view of the zoning power is barred by binding precedent. Summary judgment is proper.

## III. THE ORDINANCE ARBITRARILY DENIES PLAINTIFFS' PROPERTY RIGHTS IN VIOLATION OF THE EQUAL PROTECTION CLAUSES OF THE UNITED STATES AND TEXAS CONSTITUTIONS.

In addition to the due process claims discussed above, the Plaintiffs also raise claims under the Equal Protection clause of the 14th Amendment to the United States Constitution and the Equal Protection clause located in Article 1 Section 3 of the Texas Constitution. In contrast to a "due process action, which looks solely to the government's exercise of its power vis-a-vis the plaintiffs, an equal protection claim asks whether a justification exists for the *differential* exercise of that power." *Mikeska v. City of Galveston*, 451 F.3d 376, 381 (5th Cir. 2006) (emphasis in original). To bring an equal protection claim, the property owner must show that the difference in treatment with others similarly situated was irrational. *Id*. Or, as the Texas Supreme Court put it, differential treatment must be "based on a real and substantial difference having relationship to the subject of the particular enactment." *R.R. Com. of Texas v. Miller*, 434 S.W.2d 670, 673 (Tex. 1968).

To meet this standard, the connection between the classification drawn and the government interest claimed must be real. A city "may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary." *City of Cleburne*, 473 U.S. at 446.

For example, in *Hunt v. San Antonio*, the city of San Antonio sought to rezone two parcels based on alleged increased traffic in the area. 462 S.W.2d 536, 540 (Tex. 1971). The plaintiffs in that case challenged the rezoning as violating the equal protection clause because there was no evidence of an increase in traffic in that area sufficient to treat those lots differently than adjacent neighborhoods. *Id*. While the court assumed, arguendo, that an increase in traffic could be a legitimate reason to rezone an area, it did not simply defer to the City's claims of traffic increases. *Id*. Instead, the court looked to the actual evidence, and concluded that the distinction drawn by the city was not based on a "real and substantial" difference in traffic and the rezoning was unconstitutional. *Id*.

Similarly, in *St. Joseph Abbey*, the state claimed that prohibiting individuals who were not funeral directors (so called "third-party sellers") from selling caskets was rationally related protecting consumers from deceptive trade practices. The court rejected that argument because "there [was] insufficient evidence that . . . third-party sellers of funeral goods [were] engaged in *widespread* unfair or deceptive acts or practices" or "evidence indicating *significant* consumer injury caused by third-party sellers." *St. Joseph Abbey*, 712 F.3d at 225 (emphasis added). Moreover, as the court explained, there were already other laws on the books that addressed deceptive practices directly. *Id*. at 225–26.

The same is true here. The undisputed evidence shows that short-term rentals do not produce meaningfully more disturbances than other residential uses. *See* supra § I.A. And, as in *St. Joseph Abbey*, the City already has laws on the books that address nuisance behaviors. *See*, *e.g.* New Braunfels Code of Ordinances §50-26 (unsafe buildings), 50-27 (unoccupied buildings), 50-57 (prohibiting "filth, carrion, weeds, rubbish, junk, trash, waste products, brush and refuse, graffiti, impure or unwholesome matter of any kind, objectionable, unsightly or insanitary matter of whatever nature to accumulate or remain" on a person's property.) 62-286

(prohibiting carrion, filth, or other impure or unwholesome matter to accumulate") 82-2 (disorderly conduct on public sidewalks) 82-9 (noise) 114-4 (duty to maintain premises free from weeds, trash, filth, and debris) 144-5.1 (parking). The City's distinction is therefore arbitrary.

This is particularly true as applied to the properties in this case. There are currently hundreds of short-term rentals in New Braunfels. Ex. 8, Looney Dep. 27:21–25, Ex. 3 (AirBnB Website). The properties at issue in this case are surrounded by other short-term rentals and high traffic commercial uses like Schlitterbahn. Any distinction between short-term rentals and other residential uses in Property Owners' neighborhoods is wholly arbitrary.

## CONCLUSION

The "governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited, and other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare." *Nectow*, 277 U.S. at 188. Here, the undisputed evidence shows that the City's ban on short-term rentals does not meet this standard. Summary judgment is therefore proper.

Respectfully submitted,

*/s/ Chance Weldon*
ROBERT HENNEKE
Texas Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
Texas Bar No. 24076767
cweldon@texaspolicy.com
CHRISTIAN TOWNSEND
Texas Bar No. 24127538
ctownsend@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701

28

Telephone:   (512) 472-2700
Facsimile:   (512) 472-2728

J. PATRICK SUTTON
Texas Bar No. 24058143
The Law Office of J. Patrick Sutton
1505 W. 6th Street
Austin, TX 78703
jpatricksutton@patricksuttonlaw.com
Telephone:   (512) 417-5903

*Counsel for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2024, I electronically filed the foregoing with the Clerk of the Court for the U.S. Western District of Texas by using the CM/ECF system, which will serve a copy of same on all counsel of record.


*/s/ Chance Weldon*
CHANCE WELDON